IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARLES YOUNG,<br><br>               Plaintiff,<br>v.<br><br>MICHAEL W. ERICKSON; UTAH COUNTY CONSTABLE'S OFFICE; ROB KOLKMAN; OFFICE OF THE UTAH COUNTY CONSTABLE, LLC; UTAH PROCESS INC.; CONSTABLE KOLKMAN LLC; and JOHN DOES 1-5,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT AND DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT<br><br>Case No. 2:23-cv-420-TS-CMR<br><br>Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter comes before the Court on cross Motions for Summary Judgment filed by Plaintiff Charles Young and Defendants Michael Erickson, Utah Process, Inc., Rob Kolkman, and Constable Kolkman, LLC ("Constable Defendants"). For the reasons discussed below, the Court will deny both Motions.

I.     BACKGROUND

Plaintiff's Complaint alleges the Constable Defendants violated the Fair Debt Collection Practices Act ("FDCPA") and committed fraud.[1] The parties seek summary judgment on Plaintiff's FDCPA claim.

Mountain Land Collections ("MLC"), a debt collection company, obtained a judgment on June 28, 2022, against Plaintiff for delinquent medical debt.[2] After obtaining its judgment, MLC

---

[1] Docket No. 26.

[2] *Id.* ¶ 93.

obtained a Writ of Execution (the "Writ") on July 29, 2022.[3] MLC subsequently delivered the Writ to the Constable Defendants to serve process and act as directed in the Writ.[4] On or about August 18, 2022, Constable Michael Erickson mailed Plaintiff a collection letter that threatened to seize and sell Plaintiff's personal property if he did not pay the judgment amount and additional fees.[5] The fees included a $50 service fee, $105 mileage fee, $88.13 commission, and $15 notice fee.[6] On September 13, 2022, Constable Erickson mailed a second collection letter along with a notice of sale which stated Plaintiff's personal items would be auctioned on September 30, 2022, absent further action from Plaintiff.[7] On September 23, 2022, Constable Erickson mailed a third collection letter.[8] Plaintiff then made at least four payments to Constable Erickson as part of a payment plan.[9] From October 2022 to February 2023, Constables Erickson and Kolkman mailed five additional collection letters seeking full payment of the judgment.[10]

On June 28, 2023, Plaintiff filed the underlying FDCPA action against MLC, the Constable Defendants, and unnamed individuals, claiming they violated the FDCPA in their interactions with him.[11] He has since filed multiple Amended Complaints.[12]

---

[3] *Id.* ¶ 97.

[4] *Id.* ¶¶ 99–100.

[5] Docket No. 38 ¶ 16; Docket No. 38-5.

[6] Docket No. 38-5.

[7] Docket No. 38 ¶ 18; Docket No. 38-6.

[8] Docket No. 38-7.

[9] Docket No. 38-13 ¶¶ 48, 50, and 51.

[10] Docket No. 38 ¶ 25.

[11] Docket No. 2.

[12] Docket No. 9; Docket No. 26.

On May 13, 2024, Plaintiff filed a Motion for Partial Summary Judgment on his FDCPA claims.[13] On June 10, 2024, the Constable Defendants filed their Motion for Partial Summary Judgment, seeking summary judgment that they are exempt from the FDCPA because they interacted with Plaintiff as state officers in their official capacity.[14]

## II.   STANDARD OF REVIEW

Summary judgment is proper if the moving party can demonstrate that there is no genuine issue of material fact and it is entitled to judgment as a matter of law.[15] In determining whether a genuine dispute of material fact exists, the Court considers whether a reasonable jury could return a verdict for the nonmoving party in the face of all the evidence presented.[16] "An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim."[17] The Court is required to construe all facts and reasonable inferences in the light most favorable to the nonmoving party.[18]

"The movant bears the initial burden of making a prima facie demonstration of the absence of a genuine issue of material fact."[19] Once a movant has carried its initial burden, "the burden shifts to the nonmovant to go beyond the pleadings and 'set forth specific facts' that

---

[13] Docket No 38.

[14] Docket No. 42.

[15] FED. R. CIV. P. 56(a).

[16] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Clifton v. Craig*, 924 F.2d 182, 183 (10th Cir. 1991).

[17] *Adler v. Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998).

[18] *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Wright v. Sw. Bell Tel. Co.*, 925 F.2d 1288, 1292 (10th Cir. 1991).

[19] *Adler*, 144 F.3d at 670–71.

would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant."[20]

### III. DISCUSSION

Congress passed the FDCPA "to eliminate abusive debt collection practices by debt collectors."[21] To prevail on a FDCPA claim, a plaintiff must prove that: "(1) the plaintiff is a 'consumer' under [the Act]; (2) the debt at issue arose out of a transaction entered into primarily for personal, family, or household purposes; (3) the defendant is a debt collector under [the Act]; and (4) through its acts or omissions, the defendant violated [the Act]."[22] The parties' Motions concern the third and fourth factors.

Plaintiff argues that the Constable Defendants are debt collectors and violated the FDCPA in multiple ways.[23] The Constable Defendants argue they are precluded from FDCPA liability because they are state officials performing acts within the scope of their ordinary duties. In the alternative, they argue that even if the state official exception does not apply, the FDCPA's bona fide error defense shields them from liability.[24]

A. Constable Defendants' Motion for Summary Judgment

The Constable Defendants seek summary judgment on the FDCPA claims under the theory that they are not debt collectors but are instead state officers acting within the scope of their official duties.

---

[20] *Id.* at 671 (quoting FED. R. CIV. P. 56(e)).

[21] 15 U.S.C. § 1692(e).

[22] *Tavernaro v. Pioneer Credit Recovery, Inc.*, 43 F.4th 1062, 1067 (10th Cir. 2022); *see also Maynard v. Cannon*, 401 F. App'x 389, 393 (10th Cir. 2010); *Douglass v. Convergent Outsourcing*, 765 F.3d 299, 303 (3d Cir. 2014).

[23] *See* Docket No. 38.

[24] Docket No. 42.

The FDCPA defines a debt collector as "any person" who regularly collects debt on behalf of another.[25] Exempted from this definition are, among other categories, "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties."[26] Under Utah law, constables may be appointed by cities or counties[27] and are authorized to "execute, serve, and return all process" on individuals when ordered by a court.[28] Thus, constables are "certified as . . . special function peace officer[s] in the state"[29] and are elsewhere defined as "special function officers."[30] There is no binding federal authority defining constables as state officers, although this Court has found that constables are state officers under Utah law.[31] However, neither federal nor Utah law includes constable LLCs or companies as state officers.

Both Michael Erickson and Rob Kolkman declare they are "sworn constable[s] of the state of Utah."[32] Michael Erickson presents evidence that he is certified as a constable in Utah County,[33] and Rob Kolkman presents evidence that he is certified as constable in Ogden City, that he has completed training as a Special Function Officer, and that he is trained as a Utah Law

---

[25] 15 U.S.C. § 1692a(6).

[26] *Id*. § 1692a(6)(C).

[27] UTAH CODE ANN. § 17-25a-1(1).

[28] *Id.* § 17-25-1(1)(b).

[29] *Id.* § 17-25a-2(1).

[30] *Id.* § 53-13-105.

[31] *See Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1315–18 (D. Utah 2019) (finding that although constables were state officers, summary judgment was not appropriate when there was a factual dispute about whether constable defendants acted beyond the scope of their official duties).

[32] Docket No. 42-2, ¶ 7; Docket No. 42-3, ¶ 7.

[33] Docket No. 42-1, at 2.

Enforcement Officer.[34] Although Plaintiff includes additional state and local statutes to counteract this evidence, the undisputed facts show that the individual constables, Michael Erickson and Rob Kolkman, are state officers. However, Defendants Utah Process, Inc., and Constable Kolkman LLC, as business entities, are not state officers.

The next issue is whether the individual Constable Defendants acted within the performance of their official duties. The Constable Defendants argue they acted pursuant to their authority under the Writ to "seize and sell" Plaintiff's property when they canceled the sale of Plaintiff's property and created a payment plan.[35]

The Utah statute defining a constable's authority states that constables "shall" "attend [city or county] justice courts . . .; [and] execute, serve, and return all process directed or delivered to the constable."[36] Constables also may "serve any process throughout the state," "carry out all other functions associated with a constable."[37] Further, they must act as exclusive agents for the state, local government unit, or court with which they contract.[38] Constables are also allowed to collect fees for specific acts, including for serving documents and writs, taking property pursuant to a writ of execution order, advertising and executing sales of that property, and collecting payment for judgments within a writ of execution.[39] But constables' powers are limited to the court's order in the documents they serve.[40] This Court has denied summary

---

[34] *Id.* at 3–5.

[35] Docket No. 43, at 17–20.

[36] UTAH CODE ANN. § 17-25-1(1).

[37] *Id*. § 17-25-1(2).

[38] *Id*. § 17-25-1(3).

[39] *Id*. § 17-22-2.5.

[40] *Sexton*, 372 F. Supp. 3d at 1316 ("A constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions.").

judgment for constable defendants, even though they were state officers, when they "exceeded the scope of their authority under the writ of execution."[41]

Here, the Writ authorizes "any Sheriff or Constable having authority in the State of Utah . . . to seize and sell enough of the judgment debtor's non-exempt property . . . to satisfy the amount,"[42] which included "[a]ny cash on hand."[43] It is undisputed that the Constable Defendants did more than simply seize and sell Plaintiff's property. First, Plaintiff presented undisputed evidence that they set up a payment plan with him.[44] This Court has ruled that creating payment plans does not fall within the authority granted to a constable under Utah law.[45] Further, Plaintiff presented undisputed evidence that the Constable Defendants sent collection letters[46] and contacted Plaintiff over the phone.[47] Thus, the Court finds that the individual constables exceeded the scope of their authority and do not fall under the FDCPA's state officer exemption.

The Constable Defendants argue, in the alternative, that they are shielded from liability under the FDCPA's bona fide error defense. To succeed on a motion for summary judgment under this defense, defendant must "establish a bona fide error for each and every alleged

---

[41] *Id.* at 1317.

[42] Docket No. 38-5, at 1.

[43] Docket No. 42-4, at 3–4.

[44] *See* Docket No. 43, at 18–22.

[45] *See Campbell v. Olsen Assocs. P.C.*, No. 2:23-cv-00914-DBB-DAO, 2024 WL 3510313, at *3 (D. Utah July 23, 2024) ("No statutory authority states that a constable may enter into payment plans and accept payments from judgment debtors.") (internal quotation marks omitted) (denying a motion to certify to the Utah Supreme Court whether a writ's direction to "collect the judgment" allows the constable to collect via a payment plan).

[46] *See* Docket Nos. 38-5, 38-6, 38-7, 38-8, 38-9, 38-10, 38-11, & 38-12.

[47] *See* Docket No. 38, at 21.

violation of the FDCPA"[48] and must show by a preponderance of the evidence that the violation was (1) unintentional, (2) a bona fide error, and (3) made despite procedures reasonably adapted to avoid the violation.[49] Failing to meet any one of the three prongs bars the defense.[50] The first prong requires defendants to show that they did not intentionally violate the FDCPA under a subjective test.[51] The second and third prong are objective tests and often "merge" because "whether the debt collector's mistake was bona fide will often turn on the debt collector's due diligence practices" and "one inquiry [will] drive[] the other."[52] This process requires a two-step analysis: "whether the debt collector 'maintained'—*i.e.*, actually employed or implemented—procedures to avoid errors; and . . . whether the procedures were 'reasonably adapted' to avoid the specific error at issue."[53]

Regarding the first prong, the Constable Defendants argue that their attempt to "seize" Plaintiff's property through a payment plan was a mistake of law because they believed they were exempt from the FDCPA. They also argue that Utah law, which does not define "seize" and which also allows constables to serve writs per "debtor preference,"[54] indicates that their mistake of law was reasonable. However, the Constable Defendants ignore Supreme Court precedent, which states that "[t]he bona fide error defense . . . does not apply to a violation resulting from a

---

[48] *Caputo v. Prof. Recovery Servs., Inc.*, 261 F.Supp.2d 1249, 1259 (D. Kan. 2003).

[49] *See* 15 U.S.C. § 1692k(c); *see also Lupia v. Medicredit, Inc.*, 8 F.4th 1184, 1195 (10th Cir. 2021).

[50] *See Lupia*, 8 F.4th at 1195 (finding that because a debt collector failed the third prong, the court "needn't consider the first two prongs").

[51] *See Johnson v. Riddle*, 443 F.3d 723, 728–29 (10th Cir. 2006).

[52] *Id.* at 729.

[53] *Id.* (citations omitted).

[54] Utah R. Civ. P. 69A.

debt collector's mistaken interpretation of the legal requirements of the FDCPA" because "[a] violation resulting from a debt collector's misinterpretation of the legal requirements of the FDCPA cannot be 'not intentional.'"[55] Further, although the Tenth Circuit has not definitively ruled on the issue, "courts generally treat the FDCPA as a strict liability statute."[56]

Regarding the second and third prongs, the Constable Defendants argue that they employed procedures that prevented them from violating the law, including reviewing writs and statutes to ensure compliance, and that the writs they received were given to them in good faith. Congress has defined "procedure" as "a series of steps followed in a regular orderly definite way."[57] The Constable Defendants do not show that they followed specific procedures to prevent law violations, nor do they show that they implemented these procedures or show how these procedures are "reasonably adapted" to prevent a breach of the FDCPA. Based on the above analysis, the Court finds that the bona fide error defense does not apply as a matter of law.

Accordingly, the Court denies the Constable Defendants' Motion for Summary Judgment in its entirety. As these are the only arguments Defendants raised to suggest that they are not debt collectors, the Court concludes that they are debt collectors under the FDCPA.

B. Plaintiff's Motion for Summary Judgment

Plaintiff argues the undisputed facts show the Constable Defendants violated the FDCPA in five ways: (1) they collected and attempted to collect unauthorized or prohibited amounts; (2)

---

[55] *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 559 U.S. 573, 574 (2010).

[56] *Soren v. Equable Ascent Fin., LLC*, 2:12-cv-00038, 2012 WL 2317362 at *2 (unpublished) (D. Utah June 18, 2012) (citing *Billsie v. Brooksbank,* 525 F. Supp. 2d 1290, 1293 (D.N.M.2007); *Clark v. Capital Credit & Collection Serv., Inc.*, 460 F.3d 1162, 1175 (9th Cir. 2006); *Randolph v. IMBS, Inc.*, 368 F.3d 726, 729–730 (7th Cir. 2004); *Picht v. Hawks, Ltd.,* 236 F.3d 446, 451 (8th Cir. 2001)).

[57] *Jerman*, 449 U.S. at 587 (citing 15 U.S.C. § 1692k(c)).

they made threats they did not intend to carry out; (3) they falsely represented the character, amount, and legal status of the debt; (4) they used and distributed written communications that looked like legal documents; and (5) they failed to provide Plaintiff with the FDCPA's notice requirements.[58] The Constable Defendants did not dispute Plaintiff's facts but respond with the blanket defense that they are exempt from the FDCPA.[59]

Under the FDCPA, "debt collectors cannot use false, deceptive, or misleading representations, or unfair or unconscionable means in attempting to collect a debt."[60] The FDCPA contains a non-exhaustive list of practices that are considered false, deceptive, or misleading and unfair or unconscionable.[61] In addition to showing that a debt collector's statements or practices are false, deceptive, or misleading, the Tenth Circuit has interpreted the FDCPA to require that a debt collector's actions be "material," meaning that the debt collector's actions are "capable of influencing the consumer's decision-making process."[62] A consumer is judged by the reasonable consumer standard, not the previously-applied least sophisticated consumer standard.[63]

First, Plaintiff argues that the Constable Defendants violated the FDCPA when they attempted to collect additional fees not authorized by the Writ because the Constable Defendants never actually levied the Writ. 15 U.S.C. § 1692f prohibits debt collectors from collecting "any amount (including any . . . fee . . . ) unless such amount is expressly authorized by the agreement

---

[58] *See* Docket No. 38, at 10–21.

[59] *See* Docket No. 43.

[60] *Tavernaro*, 43 F.4th at 1067 (citing 15 U.S.C. §§ 1692 et seq).

[61] 15 U.S.C. §§ 1692 et seq.

[62] *Tavernaro*, 43 F.4th at 1067 (quoting *Van Hoven v. Buckles & Buckles, P.L.C.*, 947 F.3d 889, 894 (6th Cir. 2020)).

[63] *Id.*

creating the debt or permitted by law."[64] Utah law permits constables to collect fees for specific actions,[65] including $50 for levying an execution,[66] $2.50 for each mile "necessarily traveled" from the courthouse up to 100 miles,[67] $15 for advertising, postponing, or canceling a sale,[68] and an additional prorated fee depending on the amount of a judgment the constable collects.[69]

It is undisputed that the Constable Defendants charged Plaintiff a total of $5,800.31 in their initial letter, about $250 more than the $5,542.18 judgment set forth in the Writ.[70] This extra amount was for fees, including a $50 service fee, a $105 mileage fee, an $88.13 commission, and a $15 notices fee.[71] Utah law allows constables to collect these fees, and the fees themselves do not violate the FDCPA. But these fees are authorized for levying an execution. While the statute does not define "levy," it is generally considered to be "[t]he legally sanctioned seizure and sale of property."[72] Here, the Constable Defendants never seized physical property and therefore could not receive the $50 for levying an execution. However, the facts relating to whether the Constable Defendants earned the remainder of the fees are disputed. Therefore, the Court will deny summary judgment on Plaintiff's first argument.

---

[64] 15 U.S.C. § 1692f(1).

[65] UTAH CODE ANN. § 17-25-2.

[66] *Id.* § 17-22-2.5(2)(d).

[67] *Id.* § 17-22-2.5(5)(a).

[68] *Id.* § 17-22-2.5(2)(f) and (k).

[69] *Id.* § 17-22-2.5(2)(m).

[70] Docket No. 38-5.

[71] *Id.*

[72] *Levy*, Black's Law Dictionary (12th ed. 2024); *see also* 80 C.J.S. *Sheriffs & Constables* § 493 (2024) ("To be entitled to the statutory fee for the service of a writ of execution, a sheriff must effect the serving of an execution, make an inventory, and return."); UTAH CODE ANN. § 78B-5-502(7) ("'Levy' means the seizure of property pursuant to any legal process issued for the purpose of collecting an unsecured debt.").

Second, Plaintiff argues that the Constable Defendants violated the FDCPA by making threats they never intended to carry out. Plaintiff argues that language in the debt collection letters threatened to "sell enough of [Plaintiff's] non exempt personal property to cover the judgment,"[73] but that the Constable Defendants never intended to seize or sell because they never advertised a sale or notified MLC of the sale.[74] The FDCPA prohibits debt collectors from representing or implying "that nonpayment of any debt will result in . . . the seizure, garnishment, attachment, or sale of any property or wages of any person unless such action is lawful and the debt collector or creditor intends to take such action" or "[t]he threat to take any action that cannot legally be taken or that is not intended to be taken."[75] As discussed above, the threats must be material, meaning they must cause a reasonable consumer to act.[76] Plaintiff testified that he made payments toward the payment plan "[t]o avoid having people coming to my house and take mine and other people's things and sell them for my bills."[77] However, the undisputed facts do not demonstrate that a reasonable consumer would similarly respond to Constable Defendants' threat of sale in their letters, nor that the Constable Defendants were not authorized to seize his property. Accordingly, the Court will deny summary judgment on Plaintiff's second argument.

Third, Plaintiff asserts that the Constable Defendants violated the FDCPA when they falsely represented the character, amount, and legal status of the debt when they threatened to seize and sell Plaintiff's property and tacked on additional fees to which they were not entitled.

---

[73] Docket No. 38-5.

[74] Docket No 38, at 13.

[75] 15 U.S.C. §§ 1692e(4), (5).

[76] *Tavernaro*, 43 F.4th at 1073.

[77] Docket No. 38-20, at 49:1–3.

The FDCPA prohibits debt collectors from falsely representing "the character, amount, or legal status of any debt,"[78] and prohibits "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer."[79] As discussed above, whether the Constable Defendants intended to make a sale on the seizure of Plaintiff's property is disputed based on the facts presented. Although the record indicates that the Constable Defendants have never made a sale in any other debt collection action, that does not mean that they did not intend to do so here. And, that MLC never received information regarding a sale does not mean that a sale wasn't possible. Further, the fees were clearly marked as separate from the debt on the documents delivered to Plaintiff and as discussed above, could have been authorized under Utah law if the Constable Defendants properly served the Writ. Thus, the Court finds that Plaintiff is not entitled to summary judgment on his third argument.

Fourth, Plaintiff argues that the Constable Defendants violated the FDCPA when they used and distributed written communications that were styled as official court filings and other legal processes. The FDCPA prohibits "[t]he use or distribution of any written communication which simulates or is falsely represented to be a document authorized, issued or approved by an court, official, or agency of . . . any State, or which creates a false impression as to its source, authorization, or approval."[80] Similarly it penalizes "[t]he use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer"[81] as well as "[t]he false representation or implication that documents are legal

---

[78] 15 U.S.C. § 1692e(2)(A).

[79] *Id.* § 1692e(10).

[80] *Id.* § 1692e(9).

[81] *Id.* § 1692e(10).

process."[82] Although some of the letters more closely resemble court filings than others, and Plaintiff stated he believed some of the letters he received were "court documents,"[83] the undisputed facts do not establish as a matter of law that these letters would make a reasonable consumer believe they were true court filings. Therefore, the Court will deny summary judgment as to Plaintiff's fourth argument.

Fifth, Plaintiff argues that the Constable Defendants violated the FDCPA when they failed to include specific information in their communications with him. Under the FDCPA, debt collectors are required to notify the debtor "that the debt collector is attempting to collect a debt and that any information obtained will be used for that purpose" every time they communicate with the debtor.[84] Debt collectors are also required to notify debtors in writing that they have thirty days to dispute to debt.[85] The collection letters do not make these showings,[86] but the undisputed facts do not show that the Constable Defendants never notified the Plaintiff in other ways. Thus, the Court will deny summary judgment for Plaintiff on his final argument.

## IV.   CONCLUSION

It is therefore

ORDERED that Plaintiff Charles Young's Motion for Summary Judgment (Docket No. 38) is DENIED; It is further

ORDERED that the Constable Defendant's Motion for Summary Judgment (Docket No. 42) is DENIED.

---

[82] *Id.* § 1692e(13).

[83] Docket No. 38-20, at 51:14–19.

[84] 15 U.S.C. §1692e(11).

[85] *Id.* §1692g(a).

[86] *See* Docket Nos. 38-5, 38-6, 38-7, 38-8, 38-9, 38-10, 38-11, & 38-12.

DATED March 25th, 2025.

BY THE COURT:

_____
TED STEWART
United States District Judge