Mark A. Nickel (14082)
Kyle C. Thompson (11424)
J. Tyler Martin (13551)
Charles W. Brown Jr (19386)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W. South Temple St., Suite 1600
Salt Lake City, Utah 84101
(801) 204-9989
mnickel@grsm.com
kcthompson@grsm.com
tymartin@grsm.com
cbrownjr@grsm.com

*Attorneys for Defendants Rob Kolkman and Constable Kolkman, LLC*

---

**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF UTAH – CENTRAL DIVISION**

---

| | |
|---|---|
| CHARLES YOUNG,<br><br>    Plaintiff,<br><br>v.<br><br>MICHAEL W. ERICKSON, UTAH COUNTY CONSTABLE'S OFFICE, ROB KOLKMAN, OFFICE OF THE UTAH COUNTY CONSTABLE, LLC., UTAH PROCESS INC., CONSTABLE KOLKMAN LLC, THE CHERRINGTON FIRM, and JOHN DOES 1-5,<br><br>    Defendants. | **DEFENDANTS ROB KOLKMAN AND CONSTABLE KOLKMAN LLC'S MOTION FOR RECONSIDERATION**<br><br>Civil No. 2:23-cv-00420<br><br>Judge: Ted Stewart<br><br>Magistrate Judge: Cecilia M. Romero |

Pursuant to Fed. R. Civ. P. 54(b), Defendants, Rob Kolkman and Constable Kolkman, LLC, hereby move this Court to reconsider its March 26, 2025 Defendants' Motion for Summary Judgment and Plaintiff's Partial Motion for Summary Judgment.  This Court's ruling found (1) that Constable Kolkman LLC is not a state officer, (2) that the individual Defendants exceeded

1

the scope of their authority and do not fall under the FDCPA's state officer exemption, and (3) that the bona fide error defense does not apply as a matter of law. *Memorandum Decision and Order Denying Defendants' Motion for Summary Judgment and Denying Plaintiff's Motion for Summary Judgment* [ECF 58], pp.5, 7, 9. This motion asks the Court to reconsider its ruling because it applied an unduly narrow interpretation of the FDCPA's state-officer exemption, failed to properly account for the undisputed evidence demonstrating that Defendants were acting within their official duties, and did not consider intervening legislative clarification confirming that such conduct falls squarely within those duties.

## ARGUMENT

I.   **THE FDCPA'S STATE-OFFICER EXEMPTION IS STATUS-BASED, NOT TRANSACTIONAL, AND EXCLUDES THE CONSTABLE DEFENDANTS AS A MATTER OF LAW**

The FDCPA's definition of "debt collector" expressly excludes "any officer or employee of the United States or any State *to the extent that collecting or attempting to collect any debt is in the performance of his official duties*." 15 U.S.C. § 1692a(6)(C) (emphasis added). By its terms, the provision does not direct courts to scrutinize whether a particular collection activity was, in the moment, an authorized exercise of official duty. It defines who qualifies as a "debt collector" in the first instance—and removes from that definition any state officer or employee whose official duties include debt collection. The inquiry is categorical, not transactional: once an actor's official duties include the collection of debts, he falls outside the statutory definition of "debt collector," and the FDCPA does not reach him.

This reading is compelled by the statute's text and structure. The phrase "to the extent that" it identifies the class of state actors to whom the exemption applies—those whose official duties include debt collection—not a transactional license to relitigate, in every FDCPA case, whether the state actor's particular act was perfectly within his official duties on the day in

question. A contrary construction would collapse the exemption into the merits: a state officer would forfeit § 1692a(6)(C) protection precisely whenever a plaintiff alleged he exceeded his authority, draining the provision of any meaningful application and rendering its language surplusage. Congress wrote a status-based exclusion, not a self-defeating one.

The consequences of a transactional reading do not stop at constables. A judge who orders a defendant to pay a debt is plainly engaged in the performance of his official duties; entering judgment is the paradigmatic judicial act. Taking Plaintiff's construction to its logical conclusion, the moment that judgment is reversed on appeal—for misapplication of law, miscalculation of damages, want of jurisdiction, or any other ground—the order would retroactively cease to be a proper exercise of "official duties," and § 1692a(6)(C) would no longer shield the judge who issued it. Every reversed debt judgment in the State would, on that logic, expose the issuing judge to suit as a "debt collector" under federal law, complete with actual damages, statutory damages, costs, and attorneys' fees. *See* 15 U.S.C. § 1692k.

The same logic infects every State officer who carries out judicial process. A constable, sheriff, or marshal who serves a writ, levies on property, or otherwise enforces a judgment is performing official duties no less than the judge who issued the order, and the common law has long extended quasi-judicial immunity to such officers when they execute facially valid court process. If "official duties" had to be vindicated *act-by-act* under § 1692a(6)(C)—and forfeited whenever a court later concluded the underlying order was flawed or the officer's authority was exceeded—then the exemption would protect no one in the precise circumstances where a defendant might wish to invoke the FDCPA. The exclusion becomes a phantom: present in the text, but absent in any case where it would matter.

3

The Court should reject a construction that produces these results. Section 1692a(6)(C) excludes from the definition of "debt collector" the class of state actors whose official duties involve debt collection. It does not condition that exclusion on the *post hoc* legal correctness of any individual act, and reading such a condition into the statute would place the FDCPA on a collision course with absolute judicial and quasi-judicial immunity, federalize the supervision of state-court debt practice, and drain § 1692a(6)(C) of any meaningful field of operation.

This District has already resolved the very question now before this Court. In *Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307 (D. Utah 2019), the court held that Utah constables are "officers of the state"—endowed "with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform"—and are therefore "***excluded from the <u>definition</u> of 'debt collector' under the FDCPA***." *Id.* at 1316. That holding controls here. The Constable Defendants are officers of the State of Utah whose official duties include debt collection; under *Sexton*, and under the plain text of § 1692a(6)(C), they fall outside the FDCPA's definition of "debt collector," and therefore, the statute does not reach them.

Under Utah law, an action to enforce a judgment is an action in "debt," not in assumpsit (contract), making the judgment itself a distinct and legally cognizable debt obligation. *Yergensen v. Ford*, 16 Utah 2d 397, 400 (1965). Constables, who exist in significant part to enforce those judgments, are therefore engaged in the collection of debts as a defining feature of their office.

To be sure, *Sexton* observed that "[a] constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions." 372 F. Supp. 3d at 1316. But that descriptive sentence does not exhaust the authority Utah law confers on constables, and it cannot be read to compress the FDCPA exemption into the discrete moments when a constable is physically executing a court-issued writ. Utah Code § 17-78-603(7)(a)

4

provides that "[a] constable, contracted or appointed, may carry out all other functions associated with a constable." And as special function officers, Constables Kolkman and Erickson are statutorily authorized to "[e]xercise that spectrum of peace officer authority that has been designated by statute to the employing agency." Utah Code § 53-13-105(2)(a). Debt collection sits squarely within that spectrum—whether the constable is executing a writ of execution, levying on property to satisfy a judgment, or performing the broader range of functions Utah law assigns to the office.

Moreover, Utah's procedural rules confirm the point: "[a] writ of execution is available to seize property in the possession or under the control of the defendant following entry of a final judgment or order requiring the delivery of property or the ***payment of <u>money</u>***." Utah R. Civ. P. 64E(a) (emphasis added). When a constable executes such a writ, he is—by the Rule's own terms—collecting a debt. That conduct is the very performance of official duties Congress placed outside the FDCPA's definition of "debt collector."

### 1. *Heredia v. Green* **Confirms that the State-Officer Exemption Turns on the Officer's Duty, Not on the Mechanics of Each Particular Act.**

The leading appellate authority on the state-officer exemption confirms this reading. In *Heredia v. Green*, 667 F.2d 392 (3d Cir. 1981), the Third Circuit framed the FDCPA "debt collector" inquiry not as whether each particular act fits precisely within the bounds of the officer's official duties, but as whether the officer had the duty to take actions of that kind. Affirming the district court, the Third Circuit held that the defendant "***was acting in the performance of his official duties*** when he sent the Notices to the plaintiffs," and that § 1692a(6)(C) therefore exempted his actions from the FDCPA.

*Heredia* is widely cited for the proposition that state officers such as constables, sheriffs, and marshals are categorically not "debt collectors" under the FDCPA when their official duties

include debt collection. In *Garcia v. Fry*, 186 F. Supp. 3d 228, 231 (D. Conn. 2016), the court relied on *Heredia* to apply the exemption to a Connecticut state marshal who sent a garnishment fax to an out-of-state payroll processor in the course of post-judgment collection, holding that the exemption applied even if the marshal's specific method was not fully compliant with Connecticut procedural law because "***his actions were still performed in the course of his duties as a marshal***." So too in *Parrish v. City of Highwood*, 1998 WL 773994, at *4 (N.D. Ill. Oct. 30, 1998), where the court held that although a police officer had not adhered to department policy when making debt collection calls on bad checks, his conduct did not "depart so far from his role as a police officer so as to bring his actions within the purview of the FDCPA." And in *Weiss v. Weinberger*, 2005 WL 1432190, at *4 (N.D. Ill. June 9, 2005), the court explained: "By Court order, one of the Receiver's duties is to 'collect the income and profits' of the Weinberger Entities. Therefore, any collection efforts the Receiver undertakes are performed as part of his official duties and as such are exempt from the FDCPA . . . ." *Id.*

The Constable Defendants' official duties in this case, defined by the Writ of Execution, were to collect on the court's judgment against Plaintiff in his capacity as a judgment debtor. Applying the *Heredia* framework, setting up a payment plan with Plaintiff falls squarely within those duties. The Court should reconsider its prior ruling and hold that the individual constables fall within the FDCPA's state-officer exemption.

## 2. The FDCPA's Purpose and Legislative History Confirm the Third Circuit's Reading.

The FDCPA was enacted to "eliminate abusive debt collection practices by debt collectors" and to protect consumers from deceptive or harassing collection conduct. 15 U.S.C. § 1692a. The statute defines "debt collector" broadly to include any person who uses interstate commerce or the mails in any business the principal purpose of which is the collection of debts, or who regularly

6

collects or attempts to collect debts owed or due to another. *Id.* But Congress carved out several express exemptions. Most relevant here, § 1692a(6)(C) provides that the term "debt collector" does not include "any officer or employee of the United States or any State to the extent that collecting or attempting to collect any debt is in the performance of his official duties." *Id.* § 1692a(6)(C).

The legislative history confirms the breadth of this exemption. The Senate Report accompanying the FDCPA explains: "The term debt collector is not intended to include the following: Government officials, such as marshals and sheriffs, while in the conduct of their official duties." S. Rep. No. 95-382, at 3-4 (1977). The exemption was deliberately drawn to shield state officers exercising judicial and quasi-judicial functions—serving process, enforcing judgments, and executing writs—from FDCPA liability when they act in their governmental capacity. The statute was instead aimed at the "abusive debt collection practices" of third-party commercial debt collectors—those who "make a living as independent debt collectors" and are "the prime source of egregious collection practices." *Parrish v. City of Highwood*, 1998 WL 773994, at *4 (N.D. Ill. Oct. 30, 1998).

When statutory language is undefined, the object is to effectuate the legislative intent. *See State of Colo. v. Idarado Min. Co.*, 916 F.2d 1486, 1494 (10th Cir. 1990); *see also Marc Development v. Federal Deposit Ins. Corp.*, 771 F. Supp. 1163, 1165 (D. Utah 1991) (vacated on other grounds). A court is not bound by a literal reading of a statute when literal application would thwart its obvious purpose, *id.*, and must look to "the design of the statute as a whole and its object and policy." *Crandon v. United States*, 494 U.S. 152, 158 (1990).

The purposes Congress identified for the state-officer exemption are absent from the conduct § 1692a(6)(C) protects. State officers like constables and marshals lack the financial

7

incentive that drives predatory collection by independent commercial debt collectors; they operate within a regulatory framework imposed by the authorizing state agency; and they typically lack the financial resources to absorb the cost of FDCPA litigation pursued strategically by plaintiffs' counsel. Subjecting them to FDCPA liability would not advance the consumer-protection purposes of the statute; it would only deter the constables, sheriffs, and marshals who serve a vital role in the state court system by executing, serving, and returning process throughout the State.

Here, the Constable Defendants' duty was to collect on the court's money judgment against Plaintiff. Allowing Plaintiff to enter a payment plan rather than lose a vehicle or valuable personal keepsake to auction was an exercise of those official duties—and one that benefited, rather than harmed, Plaintiff. Read in light of the FDCPA's text, structure, legislative history, and underlying policy, the *Heredia* framework controls, and the Constable Defendants fall within § 1692a(6)(C). Stated another way, imposing FDCPA liability on a constable for negotiating a payment plan in lieu of seizure inverts the statute Congress wrote: it punishes the state officer who softened the consequences for the debtor.

3.      **Even Apart from _Heredia_, the Constable Defendants' Debt-Collection Activities Were Within the Performance of Their Official Duties.**

A constable's official duties under Utah law are not confined to the four corners of the writ being served. Utah Code § 17-78-603(7)(a) provides that "[a] constable, contracted or appointed, may carry out all other functions associated with a constable." And as special function officers, Constables Kolkman and Erickson are authorized to "[e]xercise that spectrum of peace officer authority that has been designated by statute to the employing agency, and only while on duty, and not for the purpose of general law enforcement." Utah Code § 53-13-105(2)(a).

Utah district courts have repeatedly recognized that one of the functions associated with a constable is the establishment of payment plans with judgment debtors served with writs of

execution. *See* Utah State Case No. 160903461; Utah State Case No. 200301606; Utah State Case No. 209918897; Utah State Case No. 229101187. In each, the court entered an order approving a payment plan between a constable defendant and a judgment debtor.

The Utah Rules of Civil Procedure reinforce this conclusion by defining the property subject to seizure broadly. Rule 64(a)(9) provides that "property" means the "defendant's property of any type not exempt from seizure. Property includes but is not limited to real and personal property, tangible and intangible property, the right to property whether due or to become due, and an obligation of a third person to perform for the defendant." Black's Law Dictionary classifies promissory notes as a form of intangible property, and a promissory note—with its underlying obligation to pay according to its terms—fits squarely within the kinds of property Rule 64(a)(9) authorizes a constable to seize.

The breadth of this authority is further illustrated by the writ of execution itself. The writ application authorizes the Constable Defendants to seize "cash"—an asset that cannot meaningfully be auctioned, only collected and applied. The inclusion of cash among the items the Constable Defendants are authorized to seize necessarily means the writ contemplates collection activities beyond physical seizure followed by public sale; it presupposes that the constable has authority to take and apply assets toward satisfaction of the judgment by other means.

Setting up a payment plan with Plaintiff was thus within the Constable Defendants' official duties, with authority derived both from § 17-78-603(7)(a) and from the Writ of Execution's directive to seize property from Plaintiff to satisfy the court's money judgment. Whether the inquiry is categorical or transactional, the Constable Defendants prevail: Utah law placed this conduct squarely within their official duties before, during, and after the moment Plaintiff complains of.

4. **The Utah Legislature Has Confirmed that Constables Possess the Authority to Establish Payment Plans with Judgment Debtors.**

The Utah Legislature has now spoken directly to the question before this Court: a constable's official duties include establishing payment plans with judgment debtors in lieu of seizing their property. On March 18, 2026, the Governor signed Senate Bill 156, which amends Utah Code § 17-78-603(7)—the very statute defining the scope of a constable's authority—to provide expressly that a constable may, "with the approval of a party directing the constable to seize an individual's property, establish a payment schedule with the individual in lieu of seizing the individual's property; and (c) carry out all other functions associated with a constable." *See* S.B. 156, 2026 Gen. Sess. (Utah 2026), a copy of which is attached hereto as "Exhibit 1." The amendment takes effect May 6, 2026.

The timing and circumstances of S.B. 156 transform it from a routine amendment into evidence of what § 17-78-603(7) has *always* meant. The Legislature acted in direct response to district court decisions—including the order at issue here—that construed the prior version of the statute to exclude payment-plan negotiation from constables' official authority. By stepping in promptly to make that authority explicit, the Legislature signaled, as clearly as it can, that those decisions misread Utah law. Subsequent legislative action enacted in response to judicial interpretations is properly considered as evidence of legislative intent. *See Red Lion Broadcasting Co. v. FCC*, 395 U.S. 367, 380–81 (1969) ("Subsequent legislation declaring the intent of an earlier statute is entitled to great weight in statutory construction."); *Bell v. New Jersey*, 461 U.S. 773, 784 (1983) ("Of course, the view of a later Congress does not establish definitively the meaning of an earlier enactment, but it does have persuasive value."). And the fact that the Legislature framed the amendment as an addition to § 17-78-603(7)'s pre-existing catch-all—"all other

10

functions associated with a constable"—reinforces that S.B. 156 does not create new authority but confirms authority already conferred by the statute's broader text.

That signal carries particular force here because the FDCPA's state-officer exemption turns on a question of state law. Section 1692a(6)(C) protects officers whose "official duties" include debt collection, but what those duties are is supplied by the law of the State that creates the office. When the Utah Legislature has spoken to the scope of constables' duties—and has done so in direct response to a contrary judicial reading—a federal court applying § 1692a(6)(C) should not persist in an interpretation of Utah law that the State itself has just rejected.

The Constable Defendants did precisely what the Legislature has now confirmed they were always authorized to do: establish a payment plan with a judgment debtor in lieu of seizing his property. Imposing FDCPA liability for that conduct would do more than punish the Constable Defendants for following Utah law as the Utah Legislature understands it; it would lock in a reading of Utah law that the Utah Legislature has expressly disclaimed. Section 1692a(6)(C) does not require—and the comity owed to a coordinate state legislature does not permit—that result.

### 5.    S.B. 156 Applies Retroactively to this Pending Action.

Even apart from its evidentiary weight as legislative interpretation, S.B. 156 applies retroactively to the conduct at issue here. Under Utah law, "procedural statutes enacted subsequent to the initiation of a suit which do not enlarge, eliminate, or destroy vested or contractual rights apply not only to future actions, but also to accrued and pending actions as well." *Dep't of Soc. Servs. v. Higgs*, 656 P.2d 998, 1000 (Utah 1982); *see also Moore v. Am. Coal Co.*, 737 P.2d 989, 990 (Utah 1987). A statute is procedural for these purposes "when it provides a remedy for already existing rights or merely adds to or provides a substitute for already existing remedies." *Docutel Olivetti Corp. v. Dick Brady Sys., Inc.*, 731 P.2d 475, 478 (Utah 1986). The retroactivity inquiry

is informed by whether a statute creates "new substantive rights to plaintiffs," and by "'convenience, reasonableness and justice'" in determining legislative intent. *Id.*

Utah courts apply the federal framework to this question, which is summarized as follows:

> When analyzing whether applying a statute as amended would have retroactive effects inconsistent with the usual rule that legislation is deemed to be prospective, we should use a common sense, functional judgment about whether the new provision attaches new legal consequences to events completed before its enactment. This judgment should be informed and guided by familiar considerations of fair notice, reasonable reliance, and settled expectations.

*Thomas v. Color Country Mgmt.*, 2004 UT 12, ¶ 35 (internal quotation marks omitted). The presumption against retroactive operation that the Utah Supreme Court has reaffirmed—that "a court will and ought to struggle hard against a construction which will, by retrospective operation, affect the rights of parties," *id.* ¶ 36—exists to protect parties from having their substantive rights disturbed by a new substantive law. It does not bar the application of statutes that neither enlarge nor diminish substantive rights but merely confirm authority that already existed.

S.B. 156 is such a statute. It does not enlarge, eliminate, or destroy any party's substantive rights. It gives the Constable Defendants no authority they did not already possess under § 17-78-603(7)(a)'s preexisting "all other functions associated with a constable" provision; it simply makes that authority explicit. It does not strip Plaintiff of any vested right, because Plaintiff never had a vested right to sue a Utah constable for performing duties Utah law authorizes, and it attaches no new legal consequences to events completed before its enactment—it confirms that conduct already permitted under Utah law remains permitted. None of the considerations *Thomas* identifies—fair notice, reasonable reliance, settled expectations—counsels against giving S.B. 156 effect in this case. "Convenience, reasonableness and justice" instead all weigh in favor of applying the Legislature's clarification to a pending action that turns on the very question the Legislature has now answered.

Once S.B. 156 is given its proper retroactive effect, whether the Constable Defendants acted within their official duties when establishing a payment plan with Young is not a close question. The Utah Legislature has resolved it.

## CONCLUSION

This Court's prior order rests on a reading of § 1692a(6)(C) that the statute's text does not support, that this District has rejected, and that the Utah Legislature has now expressly disclaimed. Section 1692a(6)(C) excludes from the FDCPA's definition of "debt collector" any state officer whose official duties include debt collection. The exclusion is categorical, not transactional; it operates at the level of the state actor's duties, not the moment-to-moment legitimacy of any single collection effort.

Relevant authority confirms that the Constable Defendants fall squarely within that exclusion. This District has so held. *See Sexton v. Poulsen & Skousen P.C.*, 372 F. Supp. 3d 1307, 1316 (D. Utah 2019). The Third Circuit has so held. *See Heredia v. Green*, 667 F.2d 392 (3d Cir. 1981). The FDCPA's text and legislative history so confirm. 15 U.S.C. § 1692a(6)(C); S. Rep. No. 95-382, at 3-4 (1977). The Utah Code defines constables' authority broadly enough to encompass the conduct at issue. Utah Code Ann. §§ 17-78-603(7)(a), 53-13-105(2)(a). The Utah Legislature has now stepped in—expressly, and in direct response to the rulings on which Plaintiff relies—to confirm that establishing a payment plan with a judgment debtor in lieu of seizure is among a constable's official duties. *See* S.B. 156, 2026 Gen. Sess. (Utah 2026).

A reading of § 1692a(6)(C) that produces the opposite result would do real damage. It would strip quasi-judicial immunity from the constables, sheriffs, and marshals who execute facially valid court process. It would federalize the supervision of state-court debt practice. It would impose federal-statutory liability on Utah officers for performing duties the Utah

13

Legislature has just confirmed are theirs to perform. Congress wrote no such regime, and this Court should not read one into the statute.

Defendants Rob Kolkman and Constable Kolkman, LLC respectfully request that this Court grant reconsideration of its March 26, 2025 Memorandum Decision and Order, vacate the portion of that Order denying summary judgment to the individual Constable Defendants on Plaintiff's FDCPA claim, and enter summary judgment in favor of the Constable Defendants on that claim. The text of § 1692a(6)(C), the controlling authority of this District, and the considered judgment of the Utah Legislature all point to a single conclusion: the Constable Defendants are not "debt collectors" under the FDCPA, and the FDCPA does not reach them.

**DATED** this 16th day of April, 2026.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ J. Tyler Martin*
Mark A. Nickel
Kyle C. Thompson
J. Tyler Martin
Charles W. Brown Jr.

*Attorneys for Defendants Rob Kolkman and Constable Kolkman LLC*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 16th day of April, 2026, a true and correct copy of the foregoing

**DEFENDANTS ROB KOLKMAN AND CONSTABLE KOLKMAN LLC'S MOTION FOR**

**RECONSIDERATION** was filed with the Clerk of the Court using an approved electronic filing

system, CM/ECF, which will automatically send notification of such filing to all counsel who have

entered an appearance in this action.


*/s/ J. Tyler Martin*