IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARLES YOUNG,<br><br>                Plaintiff,<br><br>v.<br><br>ROB KOLKMAN, CONSTABLE KOLKMAN, LLC, and MICHAEL ERICKSON,<br><br>                Defendants. | MEMORANDUM DECISION AND ORDER ON DEFENDANTS' MOTIONS IN LIMINE AND PLAINTIFF'S MOTION IN LIMINE REGARDING UNDERLYING DEBT<br><br><br>Case No. 2:23-cv-00420-TS-CMR<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter comes before the Court on Defendants' Motions in Limine[1] and Plaintiff's Motion in Limine[2] filed in anticipation of the jury trial set to begin in this matter on April 20, 2026. Plaintiff asserts claims for violation of the Fair Debt Collection Practices Act[3] ("FDCPA") and fraud.[4] The Court will address the Motions in turn below.

A.  Motions to exclude evidence unrelated to plaintiff, and related fact witnesses

Defendants seek an order (1) precluding Plaintiff from presenting evidence unrelated to Plaintiff as irrelevant under Rules 402 and 403,[5] and (2) excluding Plaintiff's fact witnesses who

---

[1] Docket Nos. 111–115, 138–142. At the final pretrial conference, the Court encouraged Defendants to work together on their motions to the extent possible. Defendants failed to heed this request and instead filed duplicative motions. The parties should take care to better utilize their and the Court's resources.

[2] Docket No. 128.

[3] 15 U.S.C. § 1692 *et seq.*

[4] Docket No. 26.

[5] Docket Nos. 111, 139.

have been called to testify regarding those matters under Rules 402, 403, 602, and 603 of the Federal Rules of Evidence.[6]

Defendants first argue that the Court has already correctly found such evidence and testimony to be irrelevant in a discovery ruling wherein the magistrate judge denied Plaintiff's motion for discovery of such third-party information. Next, Defendants argue that, even if it bears some relevance to the matters before the jury, such evidence and testimony would be unfairly prejudicial under Rule 403.

Plaintiff responds that "[e]vidence of how Defendants actually ran their collection operation is central to this case."[7] Specifically, Plaintiff argues that the evidence and testimony at issue "shows fraud because [Defendants] made the same false statements over and over to thousands of people;" "shows intent because the volume and consistency make clear this was not a mistake—it was the plan;" "shows knowledge because Defendant knew exactly what their letters said, what reaction they triggered, and that people paid in response to threats Defendants never carried out;" and is relevant to both statutory and punitive damages.[8]

Relevant evidence means evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence.[9] This "standard is not stringent; it is aimed at each 'brick' of evidence potentially making a wall and not every witness 'mak[ing] a home run.'"[10]

---

[6] Docket Nos. 113, 138.

[7] Docket No. 148, at 2.

[8] *Id.*; Docket No. 150, at 2.

[9] Fed. R. Evid. 401.

[10] *United States v. Yazzie*, 188 F.3d 1178, 1189 (10th Cir. 1999) (quoting Fed. R. Evid. 401 advisory committee's note).

Considering the "not stringent" standard of relevance, the Court agrees with Plaintiff that, generally, the Defendants' debt collection practices involving individuals other than Plaintiff has at least some limited relevance to one or more elements of both Plaintiff's FDCPA and fraud claim. The Court must then determine if the evidence is admissible under Rule 403.

Rule 403 excludes otherwise relevant evidence if its probative value is substantially outweighed by the danger of "unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting of time, or needlessly presenting cumulative evidence." While exclusion of relevant evidence under 403 is generally an "extraordinary remedy" that is "used sparingly[,]"[11] "[a]ssessing the probative value of [the evidence at issue], and weighing any factors counseling against admissibility is a matter first for the district court's sound judgment under Rules 401 and 403."[12]

The issues for the jury's determination involve the conduct of Defendants in their efforts to collect a debt from Plaintiff specifically, not other individuals. While the probative value of Defendants' other business practices is not wholly insignificant, the Court finds the danger of unfair prejudice, confusing the issues, misleading the jury, and wasting of time is quite significant and substantially outweighs the limited probative value of the external evidence and testimony at issue.

The Court first finds that the danger of unfair prejudice is significant. Evidence is unfairly prejudicial when it has "an undue tendency to suggest decision on an improper basis,

---

[11] *United States v. Tan*, 254 F.3d 1204, 1211 (10th Cir. 2001) (internal quotation marks and citation omitted).

[12] *United States v. Abel*, 469 U.S. 45, 54 (1984).

commonly, though not necessarily an emotional one."[13] Here, the culmination of evidence regarding conduct not directed toward Plaintiff runs the risk of invoking such a response. Specifically, even if the testimony does not evoke an unfair emotional response, the jury could easily conflate or confuse Defendants' debt collection efforts in general with the evidence regarding Defendants' efforts toward Plaintiff specifically. The Court is particularly concerned that the evidence to be elicited from each of the third-party witnesses would result in numerous mini-trials within the trial, wherein significant time would be spent eliciting testimony from the witnesses regarding the specific details of each respective debt collection, the reasonableness or wrongfulness of both the witnesses' and Defendants' purported actions in relation thereto, and clarifying points of dispute between the parties regarding such details.[14]

---

[13] *Stump v. Gates,* 211 F.3d 527, 538 (10th Cir. 2000) (internal quotation marks omitted) (quoting Fed. R. Evid. 403 advisory committee note).

[14] *See Bhatti v. Ulahannan*, 414 F. App'x 988, 989 (9th Cir. 2011) (finding no manifest error where the district excluded evidence under Rule 403 after finding, among other things, that the evidence "would effectively require a mini-trial within a trial and likely confuse the jury"); *Int'l Surplus Lines Ins. Co. v. Fireman's Fund Ins. Co.*, 998 F.2d 504, 508 (7th Cir. 1993) ("We defer to the trial court's discretionary decision that admitting [the evidence at issue] would have been unduly prejudicial and that to allow explanations and evidence to overcome the prejudice would have required a trial within a trial."); *Cleveland Bros. Equip. Co. v. Vorobey*, 655 F. Supp. 3d 305, 318–19 (M.D. Pa. 2023) (excluding evidence under Rule 403 where "beyond the prejudice, the introduction of such evidence would confuse the issues and waste time" by "potentially spark[ing] a trial within a trial on tangential matters"); *Bultena v. Wash. State Dep't of Agric.*, 319 F. Supp. 3d 1215, 1221 (E.D. Wash. 2018) (not considering evidence upon finding that "[a] jury would likely have difficulty understanding why they are being asked to evaluate the context and severity of conduct directed at individuals other than [the plaintiff]" and such evidence "would create the problem of several trials within the trial, which would be confusing and time-consuming").

Such an expenditure of time on fact patterns and disputes that are far attenuated from the matters at hand is likely to not only result in unfair prejudice, but also, in the Court's judgment, poses a significant risk of misleading the jury, confusing the issues, and wasting significant trial time. Further, considering the amount of information the jury would receive, and the relative amount of trial time expended to discuss the experience of these third-party witnesses, the Court doubts the effectiveness of a curative instruction.

Further, the Court is unconvinced that the testimony and evidence at issue provide significant probative value. Plaintiff argues that third-party testimony is "especially essential" because it shows that Defendants "never completed a single property sale, despite making those threats thousands of times over more than a decade."[15] However, the probative value of the experience of a handful (eight) isolated third parties selected by an interested Plaintiff has limited probative value in proving that Defendants "never" completed a property sale over the course of a decade. At best, the evidence will show that, of purportedly "thousands" of threats, Defendants did not complete a property sale of a small handful of individuals and business. This is far from the smoking gun Plaintiff represents it as. Generally, eight isolated witnesses out of the thousands Plaintiff purports exist provides little probative value to establish the "patterns" Plaintiff asserts.

"Probative value is also informed by the availability of alternative means to present similar evidence."[16] Notably, Defendants are available and better suited to provide the details

---

[15] Docket No. 150, at 3.

[16] *United States v. Awadallah*, 436 F.3d 125, 132 (2d Cir. 2006) (citing *Old Chief v. United States,* 519 U.S. 172, 184 (1997) ("[A] reading of the companions to Rule 403, and of the commentaries that went with them to Congress, makes it clear that what counts as the Rule 403 "probative value" of an item of evidence, as distinct from its Rule 401 "relevance," may be calculated by comparing evidentiary alternatives.").

regarding the number of property sales they initiated, if any, following "thousands" of alleged threats over the course of a decade. The same is true regarding Plaintiff's argument that the same handful of isolated incidents, "shows intent because the volume and consistency make clear this was not a mistake."[17] Again, a limited number of third-party witness testimony supporting a letter received from Defendants has minimal probative value in support of "volume and consistency." Defendants can better testify as to the "volume and consistency" of their letter writing and collection practices. The probative value of the third-party witnesses' testimony in supporting that Defendants "knew what their letters said" also seems minimal at best.

Plaintiff also argues that the witnesses' testimony will support that Plaintiff acted reasonably in response to the letters he received from Defendants because he did what the third-party witnesses will say they did—paid the money Defendants sought to collect. However, consideration of reasonable reliance under Utah law "must be considered with reference to the facts of each case."[18] The third-party witnesses here will not provide testimony as to the circumstances surrounding Defendants collections efforts directed toward Plaintiff, only to the specific facts of their experience with Defendants, further limiting the probative value of their testimony. What others did bears little relation on the reasonableness of Plaintiff's actions.

Finally, in relation to damages, Plaintiff argues the evidence "goes directly to statutory damages which requires the jury to consider the frequency and persistence of the violations

---

[17] Docket No. 150, at 3.

[18] *Robinson v. Tripco Inv., Inc.*, 2000 UT App 200, ¶ 20, 21 P.3d 219 (internal quotation marks and citation omitted); *see also Capozzoli v. Madden*, 2024 UT App 176, ¶ 45, 561 P.3d 727 ("[I]n assessing reasonable reliance, a factfinder is entitled to consider the context of the statements at issue (including their tone and tenor), what was said and what was not said, the kind of communication at issue, and any other relevant circumstances.").

under 15 U.S.C. § 1692k(b)(1)."[19] However, Plaintiff does not provide any authority to support that consideration of violations against other individuals is appropriate in assessing such damages. Such a reading would require the jury to determine whether the conduct directed to each third party actually amounted to a violation. The Court finds the more reasonable reading is that the jury is to consider the frequency and persistence of the violations against Plaintiff specifically,[20] which the third-party witnesses cannot provide.

As for punitive damages, Plaintiff argues conclusively that the testimony is relevant because "this conduct was willful, sustained for years, and deliberately handed off from one constable to the next as a functioning business."[21] Again, the probative value of a handful of selected witnesses is minimal in proving the longstanding and pervasive scheme purported by Plaintiff.

Based on the above, the Court finds the limited probative value of the third-party witnesses is substantially outweighed by the significant danger of unfair prejudice, confusing the issues, misleading the jury, and wasting time. Accordingly, the Court will grant Defendants' Motions to Exclude Plaintiff's Fact Witnesses.

Regarding Defendants' Motions to exclude evidence unrelated to Plaintiff, Defendants have not provided sufficient detail of the specific evidence they seek to exclude such that the Court can weigh the probative value against the danger of prejudice. While the Court does not

---

[19] Docket No. 148, at 2.

[20] *See e.g., Viall v. Stellar Recovery, Inc.*, No. 14-CV-01536-WYD-NYW, 2015 WL 1476697, at *3 (D. Colo. Mar. 27, 2015) (stating the court was "persuaded that the statutory language is directed at a defendant's frequency and persistence of non-compliance with the FDCPA with respect to the specific, individual plaintiff" because otherwise "an individual plaintiff could potentially benefit from conduct that was never directed to her at all").

[21] Docket No. 111, at 2.

wish to revisit the arguments rejected above at trial, the Court will deny the Motion without prejudice. Plaintiff may argue for admissibility of evidence at trial that is unrelated to him if he can support the admissibility with arguments not addressed herein.

B.   Motions to exclude evidence of compensatory damages

Defendants move to exclude evidence supporting compensatory damages on the basis that "Plaintiff has not and cannot provide anything more than mere assertions of emotional distress and 'personal injury' as a purported result of Defendants' conduct."[22] Defendants also seek to exclude the compensatory damages claims entirely.[23]

The Court will deny the Motions. To the extent that Defendants are seeking to exclude damages claims based on the sufficiency of the evidence, the Court denies the Motions as premature. If Defendants believe the evidence does not support the claims at issue in this matter, they may make a motion for judgment as a matter of law under Federal Rule of Civil Procedure 50 at the close of Plaintiff's case. To the extent that Defendants are seeking exclusion of specific testimony, the Court will also deny the Motions. Defendants do not provide a sufficient evidentiary basis for the Court to exclude evidence or testimony. Defendants may object at trial to specific testimony or evidence they believe to be inadmissible, however the Court will not speculatively exclude evidence at this time. Accordingly, the Court will deny the Motions.

---

[22] Docket No. 112, at 1–2; Docket No. 140, at 2.

[23] Docket No. 112, at 4; *see also* Docket No. 140.

C.       Motions to exclude evidence of pre-writ execution events and underlying debt

Defendants move to exclude evidence regarding the pre-writ execution events and the validity of the underlying debt.[24] Plaintiff also moves for exclusion of evidence of the validity of the underlying debt and Plaintiff's general financial condition.[25]

In his Motion, Plaintiff specifically asks the Court for an order precluding Defendants from introducing evidence, eliciting testimony, or making argument regarding: (1) the validity or the amount of the underlying debt, (2) whether Plaintiff actually owed the debt, and (3) Plaintiff's general financial condition.[26] Defendants Constable Kolkman LLC and Rob Kolkman respond  to Plaintiff's Motion arguing that, while FDCPA liability does not depend on the validity of the underlying debt, "the existence of a valid judgment and a corresponding writ of execution is fundamental to the jury's understanding of the case."[27] Kolkman Defendants also argue that Plaintiff's financial condition is relevant to his damages for emotional distress.

Defendants seek the exclusion of evidence of pre-writ execution events and the validity of the underlying debt. Plaintiff argues in his Response that the validity of the underlying debt is relevant to the fraud claim and should not be excluded.[28]

The parties appear to agree that the validity of the underlying debt is not relevant to liability under the FDCPA claim. "[C]ourts have repeatedly emphasized that 'whether the debt

---

[24] Docket Nos. 114, 141.

[25] Docket No. 128.

[26] *Id.* at 4.

[27] Docket No. 165, at 2.

[28] Docket No. 151, at 3.

itself is valid, and thus recoverable, is not relevant to Plaintiff['s] FDCPA' claims"[29] because an "'FDCPA claim does not focus on the validity of the debt, but instead on the use of unfair methods to collect it.'"[30] The Court will therefore exclude the evidence of the underlying validity and the amount of the debt for purposes of FDCPA liability.

In their responses, both parties argue that evidence of the validity of the underlying debt should come in for other reasons. First, Plaintiff argues it is admissible in relation to his fraud claim. The Court is somewhat perplexed by this argument, as Plaintiff argued in his Motion for all evidence of validity to be excluded. While Plaintiff claims this evidence is relevant because it was fraudulent for Defendants to represent that Plaintiff owed a debt he did not owe, Plaintiff makes no claim that the remaining Defendants made any representations about the validity of the underlying debt. Moreover, Plaintiff cannot use his fraud claim to collaterally attack the validity of the underlying judgment upon which Defendants were attempting to collect.[31] Instead, Plaintiff's claims are based on Defendants' collection efforts and, as Plaintiff has previously stated, he is "not complaining about, seeking to overturn, or otherwise trying to have this Court alter the state court's judgment."[32] Thus, evidence of the validity of the underlying debt or state court judgment is irrelevant and any possible relevance is outweighed by the factors set out in Rule 403.

---

[29] *Cordero v. Olson Assocs. P.C.*, No. 2:23-cv-00756, 2025 WL 1383217, at *5 (D. Utah May 13, 2025) (quoting *Cottee & Mercedes Hidalgo v. CIV SGP Acquisition Tr.*, No. 2:21-cv-00299, 2022 WL 464307, at *3 (D. Utah Feb. 15, 2022) (unpublished).

[30] *Cordero*, 2025 WL 1383217, at *5 (quoting *Bauman v. Bank of Am., N.A.*, 808 F.3d 1097, 1102 (6th Cir. 2015)); *see also Baker v. G.C. Servs. Corp.*, 677 F.2d 775, 777 (9th Cir. 1982) ("The Act is designed to protect consumers who have been victimized by unscrupulous debt collectors, regardless of whether a valid debt actually exists.").

[31] *McMurray v. Forsythe Fin., LLC*, No. 21-4014, 2023 WL 5938580, at *4 (10th Cir. Sept. 12, 2023).

[32] Docket No. 15, at 18.

The Kolkman Defendants argue that evidence of the underlying validity of the debt and the writ of execution should be admitted as relevant to establishing the legal authority under which Defendants acted and to provide the jury with necessary context to evaluate whether the collection methods used were unfair or unconscionable. Again, the Court is perplexed by this argument as Defendants argued that evidence of the underlying validity was "wholly irrelevant" in its Motion.[33] For the same reasons stated above, the Court will exclude any evidence concerning the validity of the underlying debt or state court judgment. Only the existence of the judgment is relevant to the remaining issues. Regarding the writ of execution, it does not appear that Plaintiff seeks to exclude the writ. Therefore, the Court will not exclude evidence of such at this time.

Next, Plaintiff seeks to exclude evidence of his personal financial circumstances on the basis that it is not relevant. Defendants argue that Plaintiff's personal financial circumstances are relevant to causation of his emotional distress damages. Defendants do not specify what evidence they seek to elicit or present regarding Plaintiff's personal financial circumstances.

The fact that Plaintiff claims emotional distress damages does not open the door and allow Defendants to broadly inquire as to his personal financial circumstances.[34] However, it is foreseeable that a limited inquiry may be relevant for purposes of whether Plaintiff's emotional distress was caused by Defendants actions or by some other alleged financial obligation. The Court will grant the Motion as it pertains to broad and in-depth inquiries into Plaintiff's financial situation, however, if Defendants present a narrowed inquiry to the Court prior to any evidence being presented or elicited, the Court will consider it, allowing Plaintiff to object at that time.

---

[33] Docket No. 114, at 2–3.

[34] *Cordero¸* 2025 WL 1383217, at *6 (citation omitted).

11

Finally, Defendants seek to exclude evidence of pre-writ execution events. Plaintiff does not appear to object to the exclusion of this evidence in his Response. Accordingly, the Court will exclude evidence of such at trial.

Based on the foregoing, the Court will grant Defendants' Motions and Plaintiff's Motion.

D.  Motions to bifurcate punitive damages

Defendants move to bifurcate the trial with respect to the issues of liability and punitive damages to avoid confusing the jury and unfair prejudice.[35]

Under Federal Rule of Civil Procedure 42(b), a court may conduct separate trials of issues "for convenience, to avoid prejudice, or to expedite and economize." The court has "broad discretion in deciding whether to sever issues for trial."[36] Bifurcation is proper if the issues are separable,[37] as such, "[a]lthough the same witnesses may testify in both phases, the issues and testimony are different."[38]

"Utah law permits punitive damages for fraudulent conduct 'only if compensatory or general damages are awarded and it is established by clear and convincing evidence that the acts or omission of the tortfeasor are the result of willful and malicious or intentionally fraudulent conduct, or conduct that manifests a knowing and reckless indifference toward, and a disregard of, the rights of others.'"[39] The following factors are relevant in assessing punitive damages:

> (i) the relative wealth of the defendant; (ii) the nature of the alleged misconduct; (iii) the facts and circumstances surrounding such conduct; (iv) the effect thereof on the lives of the plaintiff and others; (v) the probability of future recurrence of

---

[35] Docket Nos. 115, 142.

[36] *Easton v. Boulder*, 776 F.2d 1441, 1447 (10th Cir. 1985).

[37] *Angelo v. Armstrong*, 11 F.3d 957, 964–65 (10th Cir. 1993).

[38] *Id.* at 965.

[39] *Christensen v. Johnson Smith & Assocs.*, No. 2:19-CV-00676-BSJ, 2021 WL 66550, at *6 (D. Utah Jan. 7, 2021) (quoting Utah Code Ann. § 78B-8-201).

the misconduct; (vi) the relationship of the parties; and (vii) the amount of actual damages awarded.[40]

Defendants argue that the Court should bifurcate the liability and punitive damages issues because they are separable and evidence of Defendants' wealth will be prejudicial and confuse the jury. Particularly, Defendants cite to potential testimony that Defendants have collected $3.5 million from debtors over the years. Plaintiff argues that the issues are not separable because the same witnesses will testify about the same conduct for both issues. Plaintiff also contests that the $3.5 million figure is being offered as evidence of net worth.

In considering the relevant factors under Rule 42(b), the Court concludes that the issues of liability and punitive damages in this case are not so separable as to compel bifurcation. Specifically, Defendants will not otherwise be prejudiced if the issues are tried together. Plaintiff contests whether testimony regarding the $3.5 million in collections is being used as evidence of net worth. But even if that testimony is offered to support punitive damages, the Court does not find that testimony of Defendants' wealth would be so prejudicial as to warrant bifurcation. The jury will be instructed regarding punitive damages and Defendants may otherwise address their concerns through witness examination and closing arguments. Bifurcation would unnecessarily require additional time and resources from the Court and the jury. Accordingly, the Court will deny the Motions.

It is therefore

ORDERED that Defendants' Motions in Limine to Exclude Evidence Unrelated to Plaintiff (Docket Nos. 111, 139) are DENIED; It is further

---

[40] *Westgate Resorts, Ltd. v. Consumer Prot. Grp., LLC*, 2012 UT 55 ¶ 13, 285 P.3d 1219.

ORDERED that Defendants' Motions in Limine to Exclude Certain Evidence Concerning Plaintiff's Claim for Compensatory Damages (Docket Nos. 112, 140) are DENIED; It is further

ORDERED that Defendants' Motions to Exclude Certain of Plaintiff's Fact Witnesses (Docket No. 113, 138) are GRANTED; It is further

ORDERED that Defendants' Motions in Limine to Exclude Evidence Concerning Pre-Writ of Execution Events including Validity of Underlying Debt (Docket Nos. 114, 141) are GRANTED; It is further

ORDERED that Plaintiff's Motion in Limine Regarding Underlying Debt (Docket No. 128) is GRANTED; It is further

ORDERED that Defendants' Motions in Limine to Bifurcate Claim for Punitive Damages (Docket Nos. 115, 142) are DENIED.

DATED  April 17, 2026.

BY THE COURT:

_____

TED STEWART
United States District Judge