IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF UTAH

| | |
|---|---|
| CHARLES YOUNG,<br><br>               Plaintiff,<br><br>v.<br><br>ROB KOLKMAN, CONSTABLE KOLKMAN, LLC, and MICHAEL ERICKSON,<br><br>               Defendants. | MEMORANDUM DECISION AND ORDER DENYING DEFENDANTS' MOTIONS TO RECONSIDER<br><br>Case No. 2:23-cv-00420-TS-CMR<br><br>District Judge Ted Stewart<br>Magistrate Judge Cecilia M. Romero |

This matter is before the Court on Defendants' Rob Kolkman, Constable Kolkman, LLC, and Michael Erickson's Motions for Reconsideration of the Court's Summary Judgment Order.[1] For the reasons discussed herein, the Court will deny the Motions and order Defendants to show cause as to why they should not be sanctioned.

## I.  BACKGROUND

Plaintiff Charles Young brings claims against Defendants for violations of the Fair Debt Collection Practices Act ("FDCPA") and for fraud under Utah law. On March 26, 2025, the Court issued an Order denying both Plaintiff's and Defendants' Motions for Summary Judgment (the "Order").[2] Therein, the Court rejected Defendants' arguments that they are exempt from FDCPA liability because they sought to collect a debt from Plaintiff in their official capacity as state officials. The Court found that because Defendants acted outside the Writ of Execution by,

---

[1] Docket Nos. 168 and 169. Erickson joins the Kolkman Defendants' Motion and does not raise any additional or independent arguments.

[2] Docket No. 58.

among other things, setting up a payment plan, Kolkman and Erickson were not exempt from liability as state officers under the FDCPA.[3]

After denying summary judgment, the Court set a trial date, which was later continued. Trial is currently set to begin on Monday, April 20, 2026. The Court received Defendants' Motions on April 17, 2026, the business day before trial is scheduled to begin.[4]

## II.  DISCUSSION

Under Federal Rule of Civil Procedure 54(b), "any order . . . that does not end the action . . . may be revised at any time before the entry of judgment adjudicating all the claims." While there is no express procedural rule stating that a motion for reconsideration of an interlocutory order must be brought within a certain number of days from the issuance of the order, the Court finds the Motion shamelessly untimely.

The Court's Scheduling Order set November 11, 2024, as the dispositive motion deadline.[5] While the Court's Order was not issued until after the deadline passed, most the arguments and authority raised in Defendants' Motions have been available since the issuance of the Order—over one year ago. The Court finds that such a delay in raising known arguments is not excusable. Notably, Defendants do not assert any excuse for such a delay.

As for the more recent legislative developments cited by Defendants, the bill referenced by Defendants was passed by the Utah Legislature on March 10, 2026. If Defendants genuinely believed their arguments regarding the effect of the newly passed legislation had merit, which they do not, there is simply no reason Defendants could not have brought these issues to the

---

[3] 15 U.S.C. § 1692a(6)(C).

[4] The Kolkman Defendants' Motion was filed first around 11:57 p.m. on April 16, 2026.

[5] Docket No. 24.

Court sooner. At the very latest, Defendants should have alerted the Court at the final pretrial conference that they believed recent legislative developments were grounds for reconsideration.

Notably, Defendants offer no reason, excuse, or even acknowledgment for bringing this motion the day before trial, after the parties have submitted numerous motions in limine, proposed jury instructions, and other filings in anticipation of trial. The Court is concerned that the timing of the Motion evinces an improper attempt to harass and distract opposing counsel as he prepares for trial. This concern is further supported by the baselessness of the arguments raised in the Motions, which the Court will now discuss.

"Grounds warranting a motion to reconsider include (1) an intervening change in the controlling law, (2) new evidence previously unavailable, and (3) the need to correct clear error or prevent manifest injustice."[6] "Thus, a motion for reconsideration is appropriate where the court has misapprehended the facts, a party's position, or the controlling law. It is not appropriate to revisit issues already addressed or advance arguments that could have been raised in prior briefing."[7]

Defendants argue that the Court should reconsider its order because the Court (1) "applied an unduly narrow interpretation of the FDCPA's state-officer exemption," (2) "failed to properly account for the undisputed evidence demonstrating that Defendants were acting within their official duties," and (3) "did not consider intervening legislative clarification confirming that such conduct falls squarely within those duties."[8]

---

[6] *Servants of Paraclete v. Does*, 204 F.3d 1005, 1012 (10th Cir. 2000).

[7] *Id.*

[8] Docket No. 168, at 2.

Defendants' arguments in support of their first two grounds for reconsideration do not involve an intervening change in the law or any previously unavailable evidence. Defendants must therefore convince the Court of clear error. The "clear-error standard is a high bar."[9] A decision is "'clearly erroneous' when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed."[10]

Having reviewed Defendants' rehashed arguments and misrepresented case law, the Court is not convinced of any such error. Firstly, Defendants raise arguments either previously addressed or which could have been raised in their summary judgment motion, and are therefore not fit for a motion to reconsider. However, even considering the arguments anew, Defendants do not cite to any controlling case law that contradicts or invalidates the Court's disputed holding.

Defendants cite to *Sexton v. Poulsen & Skousen, P.C.*,[11] as "controlling authority" that "constables are 'officers of the state'—endowed 'with the authority to conduct official actions on behalf of a court that other private individuals cannot legally perform' and are therefore 'excluded from the definition of 'debt collector' under the FDCPA.'"[12] Counsel either failed to read the remainder of the decision or are attempting to mislead the Court because in the very next paragraph the *Sexton* decision states:

> This conclusion, however, does not automatically shield the constable defendants from liability. An officer of the state is immune from liability under the FDCPA only while collecting a debt in the performance of his or her official duties. A

---

[9] *Ramos v. Bondi*, 155 F.4th 1154, 1165 (10th Cir. 2025).

[10] *Id.* (quoting *Anderson v. City of Bessemer City, N.C.*, 470 U.S. 564, 573 (1985)).

[11] 372 F. Supp. 3d 1307 (D. Utah 2019).

[12] Docket No. 168, at 4 (quoting *Sexton*, 372 F. Supp. 3d, at 1316).

constable's official duties are defined by the orders and writs issued by a court or a court clerk authorizing the constable's actions.[13]

The Court went on to find that the constable's actions in that case went beyond what was prescribed by Utah law, thereby preventing the application of the state actor exemption.[14] This Court reached the same conclusion in this case. Thus, Defendants' suggestion that its prior decision is somehow in conflict with *Sexton* is without merit.

Not only did Defendants misrepresent the law stated in *Sexton*, their understanding of what amounts to "controlling" authority needs refreshing. The cases cited in their Motion either support the Court's summary judgment ruling or are non-binding, inapposite, and unpersuasive. Contrary to Defendants' misrepresentations, the Court's finding that Defendants' acted outside the scope of their authority and are therefore not exempt from liability, is consistent with the findings of the other courts within this District.[15]

Defendants' third ground for reconsideration is based on the Utah Legislature's more recent passage of Senate Bill 156 in the 2026 Legislative Session ("S.B. 156" or "the Bill"),

---

[13] *Sexton*, 372 F. Supp. 3d at 1316.

[14] *Id.* at 1316–18 (concluding that "because there is evidence that the constable defendants exceeded their authority under the order of restitution and the writ of execution, they are not entitled to summary judgment under the officer of the state exemption to liability under 15 U.S.C. § 1692a(6)(C)").

[15] *See Campbell v. Olson Assocs. P.C.,* No. 2:23-CV-00914-DBB-DAO, 2024 WL 3510313 *3–4 (D. Utah July 23, 2024) ("No statutory authority states that a constable may 'enter into payment plans and accept payments from judgment debtors," and "rules governing such writs . . . [do] not confer freestanding and unfettered authority to collect the judgment by any means the constable wishes."); *Peretto v. Erickson*, No. 1:23-CV-00025-DBB-DBP, 2024 WL 555140, at *6 (D. Utah Feb. 12, 2024) (rejecting constable defendants' affirmative defense where they took a number of actions in pursuit of a debt, but never sought to seize and sell property, and then "point[ed] to nothing in the Utah Code that would authorize them to do anything other than serve the Writ of Execution and thereafter seize and sell . . . property"); *Sexton*,  372 F. Supp. 3d at 1316–18.

which is set to go into effect on May 6, 2026.[16] This bill modifies Utah Code § 17-78-603(7) by adding the langue underlined below to the existing statute:

> A constable, contracted or appointed, may: (a) serve any processes through the state; (b) with the approval of a party directing the constable to seize an individual's property, establish a payment schedule with the individual in lieu of seizing the individual's property; and (c) carry out all other functions associated with a constable.[17]

Defendants argue that this change to the Utah statute that defines the scope of a constable's authority is clear evidence of what the Legislature has "*always* meant."[18] More specifically, Defendants assert that

> The Legislature acted in direct response to district court decisions—including the order at issue here—that construed the prior version of the statute to exclude payment-plan negotiation from constables' official authority. By stepping in promptly to make that authority explicit, the Legislature signaled, as clearly as it can, that those decisions misread Utah law.[19]

Assuming the Court can consider subsequent legislation in its statutory analysis,[20] Defendants' provide no authority or evidence to support their self-serving representations that the purpose of S.B. 156 was to amend the law to clarify what the Utah Legislature intended or that the Legislature found it necessary to do so in response to district courts, like this one, getting the interpretation wrong. In fact, Defendants' assertions run contrary to the public record. Seemingly unknown to Defendants' counsel, the recordings of the Legislature's committee meetings and floor debates surrounding the Bill's consideration and passing are publicly

---

[16] S.B. 156, 66th Leg. Gen. Sess. (UT 2026) https://le.utah.gov/~2026/bills/static/SB0156.html.

[17] *Id.*

[18] Docket No. 168, at 10.

[19] *Id.*

[20] *See Bruesewitz v. Wyeth LLC*, 562 U.S. 223, 242 (2011) ("Post-enactment legislative history (a contradiction in terms) is not a legitimate tool of statutory interpretation.").

available.[21] The Court has reviewed those discussions and that review does not support

Defendants' representations, but instead supports the Court's prior holding. The sponsor of the

Bill makes clear to the considering body that the aim of the bill is to provide constables "with a

little bit *more* flexibility in handling debt collection by allowing them to establish a payment

schedule . . . *instead of* immediately seizing" property.[22] The legislators considering the Bill

therefore understood it to authorize constables use of an additional tool, not one that already

existed.

There is also no suggestion in legislative recordings that the Bill was necessary to correct

wrongfully decided court decisions. By contrast, in committee meeting recordings discussing the

Bill, the sponsor states that the Bill was brought by "constables who wanted a change in the law

to better collect debt."[23] There is not a single mention of the Bill being presented in response to

this Court's or any other courts' rulings. Defendants' assertions that the Utah legislature sought

to overturn this Court's prior rulings, unsupported by any factual support, appears to be made out

of whole cloth.

Defendants' falsehoods are further demonstrated by the fact that S.B. 156 was first

introduced in February 2025 as S.B. 313.[24] Yet this Court's decision on summary judgment was

---

[21] *See e.g.,* Utah State Legislature, *Senate – 2026 General Session – Day 25,* at 1:13 (Feb. 17, 2026), https://www.utleg.gov/event-streaming/floor/marker/134043.

[22] *Id.*

[23] *See e.g.,* Utah State Legislature, *Senate Judiciary, Enforcement, and Criminal Justice Committee – January 27, 2026,* at 1:34:40, https://www.utleg.gov/event-streaming/committee/timeline/290014.

[24] S.B. 313, 65th Leg. Gen. Sess. (UT 2025). S.B. 313 ultimately did not pass during the 2025 General Session so it was brought back in the 2026 General Session.

not issued until March 26, 2025.[25] It would be strange indeed for the legislature to react to a decision that had yet to be issued.

Setting aside the legislative history, the plain language of the Bill further supports both that the legislative intent was to add an additional tool not previously available, and that it was not the Legislature's intent for "seizure" to include a payment plan. The language to be added to § 17-78-603(7) provides a constable with authority to set up a payment plan "*in lieu* of" seizing property,[26] making clear that payment plans are a separate method of debt collection which does not fall within the scope of actions amounting to a "seizure." Additionally, the statute's requirement of approval by the party directing the constable to set up a payment plan supports that the Legislature never intended to grant constables with carte blanche authority to set up payment plans. In sum, Defendants' assertions regarding the legislative intent of S.B. 156 appear to be a baseless attempt to mislead the Court.

Lastly, and perhaps most egregiously, Defendants assert that S.B. 156 "applies retroactively to the conduct at issue here."[27] "[T]he presumption against retroactive legislation is deeply rooted in our jurisprudence, and embodies a legal doctrine centuries older than our Republic."[28] However, an amendment to a statute "can sometimes be given retroactive effect if the changes are clarifying rather than substantive."[29]

---

[25] Docket No. 58.

[26] S.B. 156, 66th Leg. Gen. Sess. (UT 2026).

[27] Docket No. 168, at 11.

[28] *Landgraf v. USI Film Prods.*, 511 U.S. 244, 265 (1994); *see also Waddoups v. Noorda*, 2013 UT 64, ¶ 6, 321 P.3d 1108 (citing Utah Code Ann. § 68-3-3).

[29] *Dobbs v. Anthem Blue Cross & Blue Shield,* 600 F.3d 1275, 1282 (10th Cir. 2010) (internal quotation marks and citation omitted).

Defendants argue that the amended statute applies retroactively because "it does not enlarge, eliminate, or destroy any party's substantive rights." Instead, it "simply makes [the] authority [constables already have] explicit,"[30] and is therefore clarifying and not substantive. For the same reasons discussed above, the Court is firmly convinced this interpretation is erroneous. However, even if were not so convinced, the Tenth Circuit has cautioned that "[i]t is hazardous . . . to assume from the enactment of a 'clarifying' amendment that Congress necessarily was merely restating the intent of the original enacting Congress."[31] Therefore, "absent a clear indication that [the enacting legislature] intended the [a]mendments merely to clarify the proper interpretation of its prior [law], [courts are to] consider the [a]mendments to implement a change in the [the relevant law]."[32] The Supreme Court has also explained that, "[e]ven when [the legislative body] intends to supersede a rule of law embodied in [a court's] decision[] with what it views as a better rule . . . , its intent to reach conduct preceding the 'corrective' amendment must clearly appear."[33]

Simply stated, this is not a close call. There is not so much as a hint in the language of the Bill or the legislative record that the Legislature passed S.B. 156 as a means to clarify that constables always had authority to initiate payment plans in their debt collection efforts. Nor does the Legislature provide any indication that it intends the amendments to apply retroactively. The amendments are clearly substantive. Defendants' efforts to convince the Court otherwise are frivolous.

---

[30] Docket No. 168, at 12.

[31] *Fowler v. Unified Sch. Dist. No. 259, Sedgwick Cnty., Kan.*, 128 F.3d 1431, 1436 (10th Cir. 1997).

[32] *Id.*

[33] *Rivers v. Roadway Express, Inc.,* 511 U.S. 298, 313 (1994).

Defendants' Motions for Reconsideration are both untimely and without merit. Accordingly, the Court will deny them. Considering the apparent bad faith exhibited by the timing of the filing and the frivolity of the arguments raised therein, the Court will require Defendants' attorneys to show cause as to why they should not be sanctioned pursuant to Rule 11 of the Federal Rules of Civil Procedure or the Court's inherent power to sanction abusive conduct.[34] Defendants should be prepared to do so orally on Monday at 8:00 a.m., before the trial begins.

### III.  CONCLUSION

It is therefore

ORDERED that Defendants' Motions for Reconsideration (Docket Nos. 168, 169) are DENIED. It is further

ORDERED that Defendants' counsel be prepared to show cause as to why the Court should not impose sanctions at 8:00 a.m. on April 20, 2026.

DATED: April 18, 2026.

BY THE COURT:

_____
TED STEWART
United States District Judge

---

[34] *Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers," including "the ability to fashion an appropriate sanction for conduct which abuses the judicial process.") (internal quotation marks and citations omitted).