Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br><br>    Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN,<br>CONSTABLE KOLKMAN<br>LLC, AND MICHAEL<br>ERICKSON,<br><br>    Defendants. | **RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Case Number: 2:23-cv-00420-TS<br>Judge: Ted Stewart |

Plaintiff respectfully requests that the Court vacate its Rule 50(a) ruling on Plaintiff's fraud claim and request for punitive damages, and enter judgment as a matter of law in Plaintiff's favor on the fraud claim, or in the alternative, vacate its ruling and order a new trial on Plaintiff's fraud and punitive damages claims pursuant to Federal Rule of Civil Procedure 50(b).

INTRODUCTION

This motion arises from the Court's decision to grant judgment as a matter of law on Plaintiff's fraud claim and to remove Plaintiff's request for punitive damages at the close of Plaintiff's case-in-chief. The jury returned a verdict finding that both Defendants violated the Fair Debt Collection Practices Act in attempting to collect a debt from Charles Young. That finding was based on the

same false communications and deceptive collection conduct underlying the fraud and punitive damages claims the Court removed from the jury.

The evidence at trial showed that Defendants operated a debt collection system that functioned by threatening debtors with official enforcement and public sales of personal property that were never carried out. Plaintiff received letters on constable letterhead bearing law enforcement indicia stating that a public sale of his personal property would occur at his home on a specific date and time if payment was not made. As a result, he contacted Defendants, entered payment arrangements, and made payments to stop the threatened sale without realizing the threatened enforcement was unlikely to occur. Erickson operated that system for approximately eight years and conducted only two sales during that period—one of which was canceled before completion. Kolkman continued the same operation using the same templates and procedures but conducted no sales at all despite issuing more than 10,000 similar notices.

The Court concluded that Plaintiff had not presented sufficient evidence of fraud. The record, however, contains testimony and evidence from which a reasonable jury could reach the opposite conclusion. The debt owner stated he was unaware of any sale ever being conducted despite sending hundreds of cases to the Defendants. Defendants' employees explained that the purpose of the Notice of Sale was to encourage debtors to contact the office and enter payment arrangements. Defendants likewise acknowledged that their communications were intended to generate debtor contact and payments. A reasonable jury could consider that testimony, together with the threatening letters and the absence of any meaningful history of completed sales, in determining whether the communications conveyed a genuine likelihood of enforcement or instead

functioned primarily as a deceptive mechanism designed to induce payment. The evidence was therefore sufficient to submit the fraud claim to the jury.

## STANDARD OF REVIEW

Judgment as a matter of law is appropriate only when "there is no legally sufficient evidentiary basis for a reasonable jury to find for that party on that issue."[1] The Tenth Circuit has explained that such relief is proper "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[2] In evaluating the motion, the Court must view the evidence in the light most favorable to the nonmoving party and give that party the benefit of all reasonable inferences.[3] If a reasonable jury could find for Plaintiff on the evidence presented at trial, judgment as a matter of law is improper.[4]

In applying that standard, the Court may not weigh the evidence, resolve conflicts in testimony, or make credibility determinations.[5] Where the record permits reasonable inferences supporting the nonmoving party's position, the claim must be submitted to the jury rather than resolved by the court as a matter of law.[6]

## ARGUMENT

I.    THE COURT'S OWN FINDINGS IDENTIFIED A JURY QUESTION ON FRAUD AGAINST THE DEFENDANTS

---

[1] Fed. R. Civ. P. 50(a)(1)
[2] *Q.E.R., Inc. v. Hickerson,* 880 F.2d 1178, 1180 (10th Cir. 1989)
[3] *F.D.I.C. v. United Pacific Ins. Co.*, 20 F.3d 1070, 1079 (10th Cir. 1994)
[4] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)
[5] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)
[6] *See Id*. at 151

The Court concluded that Plaintiff failed to present sufficient evidence that Defendants did not intend to follow through on the threatened sale or that he sent the Notice of Sale letters with intent to deceive.[7] The trial record contains evidence from which a reasonable jury could find otherwise. Even the Court's own summary of the evidence identified testimony from which a reasonable jury could find both.

The Court acknowledged testimony from Quinn Kofford that he was unaware of Erickson ever conducting a sale. The Court also acknowledged testimony from Andrea Croft, a longtime employee of all three Defendants who mailed the threatening letters, that the purpose of the Notice of Sale was to encourage debtors to contact the constables, make arrangements, and enter payment plans. All Defendants testified that obtaining payments was their preferred method of collecting debts. Croft and Revill both testified they did not know how to carry out the threatened sales despite participating in the mailing of more than 10,000 Notices of Sale over more than a decade. Erickson testified that he conducted only two sales over approximately eight years of mailing the notices, while Kolkman testified that he never conducted a sale at all.

From that evidence, a reasonable jury could find that the threatened sales were not part of a genuine or regularly implemented enforcement process, but instead functioned as a collection mechanism designed to induce payment by creating the false impression that seizure and sale were imminent.

The Court's order did not address Plaintiff's alternative theory that Defendants acted with reckless disregard for the truth of the sale representations.

---

[7] Memorandum Decision and Order on Defendants' Motions for Judgment as a Matter of Law at 4-5 (ECF No. 196

That omission independently warrants reconsideration of the Rule 50 ruling. To establish fraud, Plaintiff need not prove that Erickson knew the representation was false. It is sufficient to prove that Erickson made the representation "recklessly and without regard for its truth."[8]

Whether characterized as intentional deception or reckless disregard, the issue was for the jury to decide. Erickson testified that despite sending Notice of Sale letters to debtors for eight years, he could only remember two potential sales in that entire period—at least one of which never occurred. His own employees could not even describe how a sale would be carried out or what paperwork they would use to report the seizure or sale to the court as required. That evidence would allow a reasonable jury to find that Erickson made representations about an imminent sale without any meaningful basis for believing those representations were accurate, which is sufficient to establish reckless disregard under Utah law. The Court never analyzed that theory and that omission is an independent basis for relief.

Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[9] Here, the testimony permitted reasonable inferences supporting Plaintiff's claim that the threatened sales were not genuinely intended and that the notices were used to create pressure to pay through threatened enforcement.

A reasonable jury hearing Erickson testify that only two sales occurred over eight years, Kolkman testify that none occurred, and both Revill and Croft

---

[8] *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14 ¶ 16, 70 P.3d 35
[9] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996) (*quoting Q.E.R., Inc. v. Hickerson*, 880 F.2d 1178, 1180 (10th Cir. 1989))

testify that they did not know how a sale would even be carried out, could conclude that the notices either intentionally or recklessly conveyed a misleading impression regarding the likelihood of any actual sale. Whether that evidence ultimately established fraud was a question for the jury, not an issue to be resolved against Plaintiff as a matter of law.

Because the record contained sufficient evidence from which a reasonable jury could find fraudulent intent, reckless disregard, and material misrepresentation, the fraud claim should not have been withheld from the jury.

II.    EXHIBITS 16 AND 17 CREATED A JURY QUESTION REGARDING FALSE REPRESENTATIONS BY THE KOLKMAN DEFENDANTS

The Court ruled that Plaintiff failed to produce evidence of a false statement by the Kolkman Defendants, characterizing the communications between Rob Kolkman and Young as consisting only of a phone call regarding payment and a letter stating that Young had missed a payment.[10] That characterization does not reflect the full trial record. The Court's order cited Plaintiff's Exhibit 16 and Exhibit 21 in connection with the Kolkman Defendants but did not reference Exhibit 17, which was admitted into evidence.[11]

Plaintiff introduced two letters authored by Rob Kolkman. Exhibit 16 notified Young that his records reflected a missed payment and directed him to call within ten days. Exhibit 17 went substantially further. It informed Young that "[t]he attached Writ of Execution is a Court Order for my office to sell enough of your non-exempt personal property to cover the judgment" and directed him to "call my office within ten days to discuss this matter **to avoid the sale** of your

---

[10] Memorandum Decision at 5 (ECF No. 196)
[11] *See* Memorandum Decision at 5 n.14; Exhibit List (ECF No. 192)

non-exempt personal property."[12] The letter also itemized fees and costs associated with the writ, including service fees, mileage, commission, and notices, for an inflated total of $5,800.31.

The letters were part of a continuous collection sequence that began with Erickson's earlier notices threatening a sale. By the time Young received either of Kolkman's letters, he had already been subjected to months of Erickson's collection letters threatening the public sale of his personal property at his own home on a specific date and time. The Kolkman Defendants took over Erickson's entire collection operation—the letter templates, the computers, the employees, and the collection system—and all four adverse witnesses testified that the transition was seamless. Croft and Revill worked for both operations. The Notice of Sale mechanism Erickson built was the same mechanism Kolkman inherited and continued to deploy. A demand for payment within ten days from the collector who had just taken over that operation, arriving on similar letterhead and bearing the same law enforcement badge, both intentionally and recklessly conveyed the same threatened sale previously communicated to Young in the earlier notices.

Exhibit 17 represented that a court order authorized the sale of Young's personal property unless he contacted the office within ten days. A reasonable jury could find that, viewed in context, the communication conveyed that a sale was imminent and would occur absent payment. Young's payment in response to that communication supports reliance and the absence of any follow-through supports an inference that the sale was not actually intended. The Court did not address Exhibit 17 or this combined effect with the prior threatened-sale

---

[12] Exhibit 17 Tally of Costs Letter (emphasis added)

communications. Because reasonable jurors could differ on whether the representations were materially false or misleading and intended to induce payment, the fraud claim should have been submitted to the jury.

III.    PLAINTIFF'S FRAUDULENT NONDISCLOSURE THEORY WAS SUPPORTED BY THE EVIDENCE AND SHOULD HAVE BEEN SUBMITTED TO THE JURY

Fraud may be committed by concealment or nondisclosure as well as by affirmative misrepresentation. Plaintiff proposed jury instructions on both theories—a Duty to Speak the Whole Truth instruction and a Concealment or Fraudulent Nondisclosure instruction.[13] Neither Erickson nor Kolkman objected to either instruction. The Court nonetheless removed both instructions following its Rule 50 ruling on the fraud claim. That removal was error because the Rule 50 ruling itself was error—the evidence supported both theories and whether Defendants committed fraud by nondisclosure was a question for the jury.

Under Utah law, a duty to disclose may arise when a party makes a partial or misleading statement, when the party knows the other is acting under a material misunderstanding, or when one party possesses material information not reasonably available to the other under circumstances giving rise to a duty of disclosure.[14] Plaintiff's theory was not that Defendants were required to volunteer every material fact. Once Defendants made representations concerning an imminent sale, however, a jury could find they had a duty to avoid presenting those statements in a manner that created a materially misleading impression about whether such a sale would actually occur.

---

[13] Plaintiff's Proposed Jury Instructions at 58-59 (ECF No. 88)
[14] *Yazd v. Woodside Homes Corp.,* 143 P.3d 283, 286 (Utah 2006); *Armed Forces Ins. Exch. v. Harrison,* 70 P.3d 35, 40 (Utah 2003)

That duty was triggered here. Erickson and the Kolkman Defendants sent the Plaintiff multiple letters representing that a sale of his personal property would occur if he did not call and pay. Those representations were incomplete. They described what would happen if Young did not respond. What neither Erickson nor the Kolkman Defendants disclosed—in any letter, in any phone call, at any point during seven months of collection activity—was that actual sales were rarely, if ever, pursued and were not part of any regularly implemented enforcement process. Erickson testified he conducted two sales over approximately eight years of mailing these notices. Kolkman testified he never conducted a sale at all despite mailing more than 10,000 similar letters. Their own employees could not describe how a sale would be conducted. That evidence permitted a reasonable inference that Defendants knew Young was responding to their letters under the mistaken belief that his property was genuinely at risk. That would be consistent with Young's testimony that he believed the letters meant his property was at real risk of being taken and sold.

The evidence further permitted a reasonable inference that the effectiveness of the collection letters depended on debtors believing that a sale of their property was likely to occur if payment was not made. A jury could conclude that Defendants did not disclose facts regarding the rarity or practical nonuse of sales because those facts could have materially affected how Young understood and responded to the notices. A reasonable jury could view the omission as material because disclosure of those facts could have significantly altered how Young evaluated the urgency and credibility of the threatened sale.

Under Plaintiff's Instruction No. 52, if Defendants made any statement, they had a duty to tell the whole truth, make a fair disclosure, and prevent a partial

statement from being misleading or giving a false impression. Under Plaintiff's Instruction No. 53, fraud by nondisclosure required proof that Defendants failed to disclose important facts they knew, that Plaintiff could not reasonably have discovered those facts, that Defendants had a duty to disclose, and that the failure to disclose caused Plaintiff's damages. The evidence was sufficient to permit a jury finding in Young's favor on each element.

Because the nondisclosure theory was tried through witness testimony, documentary evidence, and proposed jury instructions without objection from any Defendant, it was tried by implied consent under Federal Rule of Civil Procedure 15(b)(2). Plaintiff's fraud claim—including the nondisclosure theory—should therefore have been submitted to the jury. Defendants made partial representations about enforcement and omitted material facts necessary to prevent those representations from being misleading.

IV.   DEFENDANTS' IMPLIED REPRESENTATIONS OF LAWFUL AUTHORITY PROVIDED AN ADDITIONAL BASIS FOR THE FRAUD CLAIM

The fraud claim rested on more than the threatened sale. It also rested on the broader representations, conveyed through Defendants' letters, phone calls, and collection demands, that they possessed lawful authority to collect this debt and that Young was legally obligated to respond to their demands. The evidence was sufficient to permit a reasonable jury to find that Defendants lacked the statutory authority required to engage in this collection activity.

The trial record established that Defendants were not registered as debt collectors under Utah law. At the time, Utah Code Ann. § 12-1-1 prohibited any person from engaging in the business of collecting debts on behalf of another without first registering with the Utah Division of Corporations and Commercial

Code and maintaining a bond. Utah Code Ann. § 12-1-7 set forth enumerated exemptions, which did not expressly include constables acting in a private collection capacity. Utah Code Ann. § 12-1-8 conditioned the right to receive accounts and act as a collection agent on compliance with those requirements.

The Court instructed the jury in Instruction 28 in accordance with that statutory framework that Utah law prohibits any person from engaging in the business of debt collection without first registering with the State of Utah.[15] The trial record is entirely silent on any evidence or testimony showing that the constables were ever registered under Utah Code § 12-1-1 as required. The absence of such evidence, combined with Instruction 28 establishing the legal prohibition, was sufficient to permit a reasonable jury to find that Defendants were operating fraudulently by engaging in collections outside the statutory framework.

This is significant. Defendants' communications conveyed that they were lawfully authorized to act as collection agents, demand payment, negotiate payment arrangements, and enforce the debt through the threatened sale process. Those representations were reinforced by letters issued on law enforcement letterhead and bearing law enforcement indicia, which demanded payment and threatened seizure and sale of property. A reasonable jury could find that those representations of lawful authority were false or misleading because Defendants lacked compliance with Utah's statutory requirements governing debt collection activity. A debtor who understands that the person demanding payment lacks lawful authority to act as a collector may respond differently than one who believes the demand is backed by legal authority. This is especially true given that

---

[15] Jury Instructions (ECF No. 193)

collecting debts without the registration constituted a criminal violation.[16] The evidence was sufficient to permit a jury finding that Defendants' implied representations of authority were material, that Young had no reasonable means to discover the statutory noncompliance, and that he made payments in reliance on those representations.

The Court's Rule 50 ruling did not address this theory. Because the evidence was sufficient to permit a reasonable jury to find fraud on this basis, the fraud claim should have been submitted to the jury.

V.       THE COURT'S FDCPA RULING CONFIRMS THAT A REASONABLE JURY COULD FIND DEFENDANTS' CONDUCT FALSE OR MISLEADING

The Court permitted the FDCPA claim to proceed to the jury, and the jury found that both Erickson and Kolkman violated the FDCPA in attempting to collect a debt from Young. Those findings arose from the same communications, letters, and representations underlying Plaintiff's fraud claim.

The FDCPA prohibits the use of "any false, deceptive, or misleading representations or means in connection with the collection of any debt." 15 U.S.C. § 1692e. The Court found the evidence sufficient for a reasonable jury to conclude that Defendants' communications violated this standard.[17] The jury agreed and found FDCPA violations as to both Defendants.[18]

The fraud claim required proof of a false statement of material fact, knowledge or reckless disregard of falsity, intent to induce reliance, reliance, and damages.[19] The representations underlying the fraud claim were the same

---

[16] Utah Code Ann. § 12-1-6 (*Repealed 5/3/2023*)
[17] Memorandum Decision (ECF No. 196 at 3)
[18] Jury Verdict (ECF No. 194)
[19] *See Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14 ¶ 16, 70 P.3d 35 (*simplified*)

communications the jury found to be false, deceptive, or misleading for purposes of the FDCPA, including the threatened sale, the implied authority to collect, and the demand for payment reinforced by law enforcement indicia. Although the FDCPA and fraud claims impose different legal standards—particularly with respect to intent and reliance—the FDCPA verdict reflects the jury's determination that Defendants' communications were false, deceptive, or misleading. A reasonable jury could find those same communications were also materially misleading for purposes of Plaintiff's fraud claim.

The Court's Rule 50 ruling is difficult to reconcile with that verdict. It concluded that the evidence was insufficient to permit a jury finding of fraud, while simultaneously allowing a jury to find that the same communications were false, deceptive, or misleading under federal law. At minimum, the FDCPA verdict confirms that the evidentiary record was sufficient to support a finding that Defendants' representations were misleading in material respects. Because the same evidence supported the FDCPA verdict and was sufficient to permit a reasonable jury to find falsity and material misrepresentation, the fraud claim likewise should have been submitted to the jury.

## VI. THE EVIDENCE WAS SUFFICIENT TO PERMIT A JURY FINDING ON PUNITIVE DAMAGES

Punitive damages were removed on two grounds. First, the Court granted judgment as a matter of law on the fraud claim which eliminated the predicate for punitive damages. Second, the Court ruled in the alternative that the evidence was insufficient to support punitive damages even if the fraud claim had survived.[20] Both rulings are subject to separate analysis.

---

[20] Memorandum Decision at 6 (ECF No. 196)

On the first ground, punitive damages must be reinstated if the fraud claim is reinstated. Because the Rule 50 ruling on fraud was error for the reasons set forth above, the removal of punitive damages on that basis likewise cannot stand.

On the second ground, the Court's alternative ruling was independently erroneous. To recover punitive damages under Utah law, Plaintiff must prove by clear and convincing evidence that Defendants' conduct was willful and malicious, intentionally fraudulent, or manifested a knowing and reckless indifference toward, or disregard of, the rights of others.[21] In evaluating a Rule 50 motion, the Court was required to view the evidence in the light most favorable to Plaintiff and draw all reasonable inferences in Plaintiff's favor.[22] The record evidence was sufficient to satisfy that standard.

Here, the record contained ample evidence from which a reasonable jury could find knowing and reckless indifference. Defendants operated a debt collection system without registration under Utah's statutory scheme governing debt collection activity. They nonetheless engaged in repeated collection efforts over a period of years, sending thousands of letters demanding payment, and threatening seizure and sale of personal property. Erickson testified that he conducted only two sales over approximately eight years and Kolkman testified that he never conducted a sale despite sending more than 10,000 similar notices. Their employees testified they could not describe how the threatened sale process would be carried out, despite working for both constables and personally handling thousands of writs of execution. The collection letters were issued on constable

---

[21] Utah Code Ann. § 78B-8-201; *Long v. Stutesman*, 2011 UT App 438 ¶ 36, 269 P.3d 178
[22] *Reeves v. Sanderson Plumbing Prods., Inc*., 530 U.S. 133, 150 (2000)

letterhead and bore law enforcement indicia, conveying the appearance of official legal authority.

A reasonable jury could find from this evidence that Defendants engaged in a systematic collection practice that relied on threats of property seizure that were rarely, if ever, carried out, and that the operation depended on debtors responding to those threats under the belief that the sales were real and imminent. Defendants also testified that the same collection operation continues today under a third constable, Travis Reitz. This is precisely why punitive damages are appropriate.

Punitive damages serve to punish and deter conduct that is not likely to be deterred by compensatory or statutory remedies alone.[23] Punitive damages may be awarded on proof of "willful and malicious," conduct,[24] or on proof of conduct which manifests a knowing and reckless indifference toward, and disregard of, the rights of others,[25] especially where compensatory damages may be simply absorbed as a cost of business.[26] Viewed in the light most favorable to Plaintiff, the evidence was sufficient to permit a reasonable jury to find that Defendants' conduct satisfied these standards.

The Court's reliance on testimony characterizing Defendants' subjective beliefs does not resolve the issue under Rule 50. The Court was not permitted to credit Defendants' explanations or weigh credibility. "Credibility determinations,

---

[23] *Behrens v. Raleigh Hills Hosp., Inc.*, 675 P.2d 1179, 1186 (Utah Sup. Ct. 1983)

[24] *e.g., Leigh Furniture and Carpet Co. v. Isom*, 657 P.2d 293, 312 (Utah Sup. Ct. 1982); *First Security Bank of Utah v. J.B.J. Feedyards, Inc*., 653 P.2d 591, 598 (Utah Sup. Ct. 1982); *Elkington v. Foust*, Utah, 618 P.2d 37, 41 (1980); *Kesler v. Rogers*, 542 P.2d 354, 359 (Utah Sup. Ct. 1975)

[25] *Branch v. Western Petroleum, Inc*., 657 P.2d 267, 277-78 (Utah Sup. Ct.1982); *Terry v. Zions Cooperative Mercantile Institution*, 605 P.2d 314, 327 (Utah Sup. Ct. 1979)

[26] *See also* Restatement (Second) of Torts § 908 (1979)

the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge, whether he is ruling on a motion for summary judgment or for a directed verdict."[27] The question was whether the evidence permitted a reasonable jury to find willful and malicious conduct or knowing or reckless indifference. It did. The evidence was sufficient to permit submission of punitive damages to the jury, and the Court's alternative ruling was error.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court vacate its Rule 50(a) ruling on Plaintiff's fraud claim and request for punitive damages, and enter judgment as a matter of law in Plaintiff's favor on the fraud claim. In the alternative, this Court should vacate its ruling and order a new trial on Plaintiff's fraud and punitive damages claims pursuant to Federal Rule of Civil Procedure 50(b).

DATED 5/14/2026                                    Eric Stephenson
                                                   *Attorney for the Plaintiff*

---

[27] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505 (1986)

RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

CERTIFICATE OF SERVICE

I hereby certify that on 5/14/2026 I served the foregoing RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*