Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br><br>    Plaintiff,<br><br>vs.<br><br>MOUNTAIN LAND<br>COLLECTIONS, *et al*.,<br><br>    Defendants. | **MOTION FOR NEW TRIAL**<br><br>*(Request for Hearing)*<br><br>Case Number: 2:23-cv-00420-TS<br>Judge: Ted Stewart |

Plaintiff respectfully requests a new trial on his fraud and punitive damages claims pursuant to Fed. R. Civ. P. 59(a). This motion is filed in the alternative to Plaintiff's Renewed Motion for Judgment as a Matter of Law pursuant to Fed. R. Civ. P. 50(b). If the Court declines to reinstate those claims under Rule 50(b) a new trial is independently warranted because the evidentiary rulings addressed herein materially truncated the trial record on the dispositive issue of intent and contributed to the Court's Rule 50 determination. Plaintiff also requests a hearing pursuant to DUCivR 7-1(g).

INTRODUCTION

The Court granted judgment as a matter of law on Plaintiff's fraud claim and denied submission of punitive damages to the jury at the close of Plaintiff's case-in-chief. In doing so, it concluded that the evidence was insufficient to permit a reasonable jury to find that Defendants intended not to follow through on

the threatened property sales or that they acted with the knowing and reckless indifference required for punitive damages under Utah law.

That conclusion was reached on a record materially incomplete due to the Court's own evidentiary rulings. The Court excluded percipient witnesses who experienced Defendants' collection practices firsthand, restricted examination into the volume and pattern of Defendants' collection operation, and barred use of a Defendant's prior sworn testimony to test his claimed inability to recall the scope and scale of his own business operations. These rulings were not minor adjustments at the edges of the evidentiary record. They removed the most probative evidence bearing on the precise element that determined the Rule 50 outcome—intent.

As a result, the Court's Rule 50 determination rested on a record in which Defendants' explanations were largely unchallenged—not because contrary evidence did not exist—but because it was excluded. That is the precise prejudice Rule 59 is designed to remedy.

## STANDARD OF REVIEW

Rule 59(a)(1)(A) authorizes a new trial "for any reason for which a new trial has heretofore been granted in an action at law in federal court."[1] A new trial may be appropriate where the jury verdict is against the weight of the evidence, the damages are excessive, a party was prejudiced by erroneous evidentiary rulings, or the trial was not fair to the moving party.[2] The standard for granting a

---

[1] Fed. R. Civ. P. 59(a)(1)(A)

[2] *Montgomery Ward & Co. v. Duncan*, 311 U.S. 243, 251, 85 L. Ed. 147, 61 S. Ct. 189 (1940); *Holmes v. Wack*, 464 F.2d 86, 88-89 (10th Cir. 1972); *Medtronic, Inc. v. Intermedics, Inc.*, 799 F.2d 734, 740-41 (Fed. Cir. 1986)

motion for a new trial is "less stringent than the standard applied when considering a motion for judgment n.o.v."[3]

Rule 61 further provides that the court must disregard any error or defect that does not affect a party's substantial rights, and thus only prejudicial error may support a new trial.[4] Where multiple evidentiary errors occur, their cumulative effect may warrant relief if, considered together, they had a substantial and injurious effect on the fairness of the trial, even if no single error would independently justify reversal.[5]

## ARGUMENT

The FDCPA liability verdict stands. The new trial requested here is limited to Plaintiff's fraud claim and entitlement to punitive damages—distinct and separable issues that were resolved by the Court rather than the jury. Plaintiff preserved each category of excluded evidence by timely proffering its purpose and relevance at trial, making contemporaneous offers of proof regarding excluded witnesses and lines of examination, and objecting to each ruling on the record.

I.     THE EXCLUDED EVIDENCE WAS PROOF OF FRAUDULENT INTENT

The Court's Rule 50 ruling turned on a narrow but dispositive question. Whether the evidence was sufficient for a reasonable jury to conclude that Defendants made a false statement and did not intend to carry out the property sales they threatened.[6] Under Utah law, to establish fraud based on a

---

[3] *Megadyne Med. Prods. v. Aspen Labs.*, 864 F. Supp. 1099 (D. Utah 1994)
[4] Fed. R. Civ. P. 61
[5] *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)
[6] Memorandum Decision and Order at 4–5 (ECF No. 196)

misrepresentation of intended future performance, a plaintiff must prove that the defendant, at the time of the representation, did not intend to perform and made the representation for the purpose of deceiving the other party.[7] Here, the Court found that Plaintiff had not produced sufficient evidence of that intent. That finding, however, was made on a record from which the most probative evidence of non-intent had been excluded before trial.

Defendants sent Notices of Sale to more than 10,000 debtors over more than a decade. Each notice specified a date, time, and location for a property sale. No sale was ever conducted by Kolkman. Erickson conducted one sale over eight years and almost held a second until it was stopped by payment of the amount due. That is a significant difference between the number of sales threatened and the number that actually occurred. The excluded percipient witnesses—Tara Peretto, Elizabeth Hernandez, Kendall Thomas, and Heidi Cordero—each would have testified that they received the same Notice of Sale letter and no sales were ever conducted in response to any of those notices whether they paid or not.

This uniform pattern of threatened but never-executed sales, demonstrated across thousands of transactions and more than a decade, would have permitted a reasonable jury to infer that the notices were not genuine enforcement instruments but a structured payment-inducement mechanism. The evidence was also sufficient to establish liability under the alternative theory of reckless disregard— making representations about an imminent sale without any intention or capacity to carry one out.[8] This is especially true given that it is illegal for the constables to sell the property on the same day as they seize it as indicated in the letters.[9]

---

[7] *Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994)
[8] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14 ¶ 16, 70 P.3d 35
[9] Utah R. Civ. P. 64(d)(3)(C) and Utah R. Civ. P. 64E(d)

Because this evidence was excluded, the Rule 50 analysis was conducted on a record that did not include the most probative evidence of intent derived from the operation's actual outcomes over time. The cumulative effect of never holding any sales and never seizing any property should have been presented to the jury for its factual determination whether Defendants intended to carry out the sale.

## II.    THE COURT IMPROPERLY EXCLUDED PERCIPIENT WITNESSES

The Court excluded the testimony of Tara Peretto, Elizabeth Hernandez, Kendall Thomas, and Heidi Cordero, despite their personal knowledge of Defendants' collection practices under Fed. R. Evid. 602. Their testimony was admissible under Rules 401 and 402 because it concerned Defendants' own conduct in materially identical circumstances. The testimony was also admissible under Rule 406 as evidence of Defendants' recurring and substantially uniform collection practices. The consistent and uniform pattern of sending Notices of Sale without ever conducting the threatened sale constitutes habit or routine practice under Rule 406, which is admissible to prove conforming conduct on the occasion at issue. Each witness received substantially identical Notices of Sale and was subjected to the same threatened property-seizure process. Some witnesses contacted Defendants and made payments in response to the notices, while others did not pay. In both circumstances no threatened sale was ever carried out. That is directly relevant to whether Defendants intended to carry out the same threats here.

The testimony was also admissible under Rule 404(b)(2) to prove intent, knowledge, plan, and absence of mistake.[10] Such evidence is particularly critical when the disputed issue involves the actor's state of mind and the only means of ascertaining that mental state is by drawing inferences from conduct.[11] Plaintiff did not offer the testimony as evidence of unrelated "other acts" or propensity. The testimony concerned materially identical conduct undertaken through the same collection process at issue in this case. Where challenged conduct is repeated in substantially identical form across multiple transactions, evidence of those transactions is not collateral to the claims being tried; it is evidence of the existence, operation, and intended function of the scheme itself. Courts in the debt-collection context have recognized that standardized form-letter practices may support an inference of knowing misrepresentation rather than isolated clerical error.[12]

Each excluded witness would have testified that the threatened sale identified in his or her notice never occurred. That testimony was central to the fraud claim for at least two independent reasons and independently supported Plaintiff's punitive damages request.

First, the testimony bore directly on Defendants' intent. A single instance in which a debtor pays before a threatened sale occurs could be consistent with a genuine enforcement effort interrupted by payment. Evidence that the same threatened-sale process was repeated across thousands of debtors without any sale being conducted strongly supports the inference that the threatened action was

---

[10] Fed. R. Evid. 404(b)(2); *Huddleston v. United States*, 485 U.S. 681, 685 (1988)

[11] *Huddleston v. United States*, 485 U.S. 681, 685 (1988)

[12] *See Clomon v. Jackson*, 988 F.2d 1314, 1320-21 (2d Cir. 1993); *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993)

never intended.[13] That inference goes directly to the element of non-intent the Court found lacking.[14]

Second, the testimony was probative of Defendants' knowledge. Plaintiff presented evidence that Defendants' own employees could not explain the basic procedures necessary to conduct a property sale. Evidence that Defendants nevertheless issued sale notices to thousands of debtors over more than a decade would have permitted a reasonable jury to conclude that Defendants knew the threatened sales were not genuine enforcement actions. A reasonable jury could infer from that combination—systematic ignorance of the sale process coupled with the repeated issuance of sale notices—that Defendants knew the threatened sales would never occur.

The testimony was also independently relevant to punitive damages. Evidence of an institutional practice of threatening property seizures that were never carried out, sustained across thousands of debtors over more than a decade, supports a finding that Defendants acted with knowing and reckless indifference to the rights of others under Utah Code Ann. § 78B-8-201(1)(a).

To the extent the Court excluded this testimony under Fed. R. Evid. 403, that ruling was an abuse of discretion. The probative value of percipient witness testimony on intent—the precise element the Court found lacking—was substantial and not substantially outweighed by any risk of unfair prejudice.[15] Any legitimate concerns about cumulative presentation or trial efficiency could have been addressed through reasonable limits on the number of witnesses or the scope

---

[13] *See Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62-63 (2d Cir. 1993) (collector's repeated failure to take threatened action supports finding that the action was not intended under § 1692e(5)); *see also Pipiles v. Credit Bureau of Lockport, Inc.*, 886 F.2d 22, 25–26 (2d Cir. 1989)
[14] *See Memorandum Decision and Order* at 4–5 (ECF No. 196)
[15] *Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)

of examination. Indeed, Plaintiff already limited that risk by only attempting to call four percipient witnesses when he had well-over a dozen more he could have included. Wholesale exclusion was not an appropriate remedy.

In granting Defendants' motion to exclude the witnesses, the Court relied in part on a prior discovery ruling in which the magistrate judge denied Plaintiff's motion to compel production of records relating to other individuals' claims. That prior discovery ruling addressed whether Defendants were required to produce records. It did not address—and cannot reasonably be extended to exclude—live percipient trial testimony based on each witness's independent personal experience. The scope of document discovery and the admissibility of firsthand testimony present distinct legal questions governed by different standards. By treating the discovery ruling as a basis to exclude otherwise admissible witness testimony, the Court effectively conflated those separate inquiries. Because this testimony went directly to Defendants' intent, knowledge, and absence of mistake, its exclusion materially altered the evidentiary record on the precise element the Court later found lacking in granting Rule 50.

III.    THE COURT IMPROPERLY RESTRICTED TESTIMONY OF THE DEFENDANTS' COLLECTION OPERATION

The Court improperly excluded evidence regarding the scale and operation of Defendants' collection practices, including the number of Notices of Sale issued, the amounts collected in response to those notices over the years, and the absence of completed property sales across the span of the operation. That evidence was neither collateral nor cumulative. It was among the most probative evidence available to show that Defendants did not intend to carry out the threatened sales when the notices were sent.

The central fraud question was whether Defendants intended the threatened sales to occur when the Notices of Sale were sent. The excluded operational evidence was highly probative of that issue. The evidence showed that Defendants issued more than 10,000 Notices of Sale and collected more than $3.5 million in response to those notices. Kolkman conducted no sales, and Erickson conducted only one over approximately eight years of issuing such notices. Plaintiff also presented evidence that no movers were hired, no storage arrangements were made, no law enforcement coordination occurred, and no property was publicly advertised for sale in connection with the threatened sales.

The excluded evidence would have further shown that Defendants routinely scheduled multiple threatened sales on the same day at intervals as short as ten minutes, a pattern from which a reasonable jury could infer that actual execution of the threatened sales was never realistically contemplated. The evidence also would have shown that the Notices of Sale threatened seizure and sale on the same date, despite Utah law requiring a waiting period between seizure and sale to permit objections, notice, and public advertisement procedures.[16] A notice structure that systematically described a process that could not lawfully occur as represented would have further supported the inference that the threatened sales were not genuine enforcement actions, but coercive collection devices intended to induce payment through the appearance of imminent property loss.

A jury presented with this operational record could reasonably conclude that Defendants represented that property sales would occur despite lacking any intent, legal authority, or practical capacity to conduct them. That evidence would

---

[16] Utah R. Civ. P. 64(d)(3)(C) and Utah R. Civ. P. 64E(d)

support a finding of fraudulent misrepresentation under *Andalex Resources, Inc. v. Myers*, 871 P.2d 1041, 1047 (Utah Ct. App. 1994), because a reasonable jury could infer that Defendants made representations about future sales without any present intention of carrying them out. The same evidence would also support a finding of reckless disregard under *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35, by permitting the inference that Defendants repeatedly threatened a process they knew could not lawfully or practically occur as represented. In turn, that evidence would satisfy the punitive damages standard under Utah Code Ann. § 78B-8-201(1)(a), which permits punitive damages upon proof of willful and malicious conduct or conduct demonstrating knowing and reckless indifference to the rights of others.

The limitation left the record with Erickson's isolated admission that he conducted only one sale over approximately eight years but without the operational context necessary to evaluate the significance of that testimony. One completed sale takes on a materially different meaning when viewed against evidence that Defendants issued more than 10,000 Notices of Sale during the same period. Absent that broader context, the jury and the Court were left with an incomplete and potentially misleading picture of Defendants' practices. A reasonable jury presented with the full operational pattern could have drawn materially different inferences regarding whether the threatened sales were genuinely intended or merely used as leverage to induce payment.

To the extent the Court excluded this evidence under Rule 403, that ruling cannot withstand scrutiny under the governing balancing standard. The excluded evidence went directly to the dispositive issue identified in the Rule 50 ruling— Defendants' intent—and therefore carried exceptionally high probative value.

Any potential concerns regarding unfair prejudice, confusion, or undue delay were comparatively minimal and could have been addressed through reasonable limits on the scope or presentation of the evidence rather than categorical exclusion.[17] Rule 403 permits exclusion only where the danger of unfair prejudice substantially outweighs probative value. On this record, exclusion of the broader operational evidence exceeded the proper bounds of Rule 403 discretion.

## IV.  THE COURT IMPROPERLY EXCLUDED ERICKSON'S PRIOR SWORN TESTIMONY

At trial, Erickson testified that he could not recall the volume of writs he processed, the amounts he collected, or the scope of his collection activities over the years. Plaintiff sought to impeach this testimony with Erickson's prior sworn deposition testimony from *Cordero v. Olson Associates, P.C.*, Case No. 2:23-cv-00756, a related action in this district involving the same defendants, the same collection practices, and the same form notices. The Court declined to admit the testimony on two separate occasions. That exclusion was erroneous under multiple independent provisions of the Federal Rules of Evidence.

Rule 613(b) permits the use of prior inconsistent statements for impeachment. A witness who testifies at trial that he cannot recall material facts, but who previously testified under oath about those same facts, has provided a prior statement inconsistent with his claimed lack of memory and is therefore subject to impeachment.[18]

Rule 801(d)(1)(A) further provides that a prior sworn statement is not hearsay when the declarant testifies at trial, is subject to cross-examination, and

---

[17] *See Sprint/United Mgmt. Co. v. Mendelsohn*, 552 U.S. 379, 387 (2008)
[18] *United States v. Distler*, 671 F.2d 954, 958 (6th Cir. 1981)

MOTION FOR NEW TRIAL

the prior statement is inconsistent with the declarant's testimony. Erickson's claimed lack of recollection was inconsistent with his prior sworn deposition testimony describing the scope and operation of his collection activities, satisfying that rule.

Rule 611(b) independently supports admission because cross-examination properly extends to matters affecting credibility, including the reliability of a witness's asserted inability to recall material facts. The Court's stated basis for exclusion—that the deposition was taken in a different case—is not a permissible ground for exclusion under Rules 613, 801(d)(1)(A), or 611(b), each of which governs admissibility based on inconsistency and credibility rather than the forum in which prior sworn testimony was given.

Erickson's prior statements were his own words, given under oath and with counsel present, in an adversarial proceeding involving his identical conduct. The Federal Rules of Evidence do not limit the admissibility of prior sworn statements to the case in which they were taken, and no basis exists to question the reliability or fairness of testimony given under those conditions.

This error was not harmless. The Rule 50 ruling was made on a record in which Defendants' explanations for their conduct were largely uncontradicted. Erickson's professed lack of recollection regarding the scope of his own operation went untested despite the existence of prior sworn testimony that directly addressed those same operational facts. That testimony could have provided the jury—and the Court—with a materially different basis for evaluating the credibility of his claimed ignorance.

V.    THE COURT ERRED IN EXCLUDING SELF-AUTHENTICATING BUSINESS RECORDS AND PLAINTIFF'S RULE 1006 SUMMARY EXHIBIT

Plaintiff also sought to introduce payment-processing records obtained from Block, Inc. (formerly Square, Inc.) through a subpoena issued in related litigation involving the same Defendants and the same collection operation. Block, Inc. produced those records with a sworn certification from its records custodian, Shelley Combs, attesting that the records were true copies of records made and kept in the ordinary course of regularly conducted business activity and produced in response to the subpoena. That certification satisfied the requirements of Fed. R. Evid. 902(11) and established the records as self-authenticating business records admissible under Rule 803(6).

Plaintiff additionally disclosed a summary exhibit compiled from the underlying transaction data. The underlying records consisted of thousands of individual payment transactions maintained in electronic spreadsheet format. Because those records could not conveniently be examined in court in their raw form, Plaintiff prepared a summary exhibit pursuant to Fed. R. Evid. 1006. Rule 1006 expressly permits the use of summaries to present the contents of voluminous records where the underlying materials are otherwise admissible and available for examination.

The Court excluded both the underlying records and the Rule 1006 summary. No written order explained the basis for exclusion. To the extent the ruling rested on the fact that the subpoena referenced a different case number, that rationale does not support exclusion. The subpoena was directed to Block, Inc., a third-party records custodian, and sought authentic business records concerning the same Defendants and the same payment-processing activity at issue here.

Kolkman is a defendant in both actions and the authenticity and reliability of the records do not depend on the caption of the subpoena through which they were obtained. Requiring Plaintiff to issue duplicative subpoenas for identical third-party business records in every related action would elevate form over substance and impose unnecessary expense inconsistent with the proportionality principles embodied in Fed. R. Civ. P. 26(b)(1).

The excluded records and summary were also highly probative of both intent and punitive damages. They would have provided documentary corroboration for the more than $3.5 million in collections that Defendants' own witness acknowledged at trial and would have shown the scale of the operation transaction by transaction across thousands of debtors. They would have also demonstrated the regularity with which each payment was collected as the dates for each payment are included in the spreadsheet. That evidence bore directly on the persistence, financial benefit, and institutional nature of the challenged conduct. Without it, the jury heard an isolated figure referenced in testimony but did not see the operational record underlying it. A reasonable jury evaluating punitive damages could view documented proof of thousands of transactions and millions of dollars in collections very differently than a single uncorroborated number mentioned in passing at trial.

## VI.    THE PREJUDICIAL EFFECT OF THESE ISSUES WAS CUMULATIVE

The cumulative effect of these evidentiary rulings was to exclude from the trial record—and from the Rule 50 analysis—the most probative evidence bearing on the central issue that determined the disposition of the fraud claim.

The Court identified a single dispositive gap in Plaintiff's proof. According to the Rule 50 ruling, Plaintiff failed to present sufficient evidence that Defendants did not intend to carry out the threatened sales or that they acted with knowing and reckless indifference.[19] Each category of excluded evidence addressed that gap directly. The percipient witnesses would have provided firsthand testimony that the threatened sales did not occur across thousands of instances. That supports the inference that the threats were not genuine enforcement actions. The operational scope evidence would have also supplied the statistical and structural context necessary to evaluate that pattern at scale and to assess intent systemically rather than anecdotally. Erickson's prior sworn testimony would have provided a basis to test the credibility of his claimed inability to recall and to assess whether his trial explanations were consistent with his prior sworn statements in related proceedings.

Had these rulings been decided differently, the record before the Court at the Rule 50 stage would have been materially different. The inquiry under Rules 59 and 61 is not whether the excluded evidence would have guaranteed a different outcome, but whether the evidentiary errors, considered collectively, affected the substantial rights of the moving party and undermined the fairness of the trial.[20] That standard is satisfied here. A jury presented with evidence of thousands of unfulfilled sale threats, more than $3.5 million collected in response to those threats, operational employees unable to describe how a sale would be carried out, and Erickson's prior sworn testimony contradicting his trial account, could

---

[19] Memorandum Decision at 4–6 (ECF No. 196)
[20] Fed. R. Civ. P. 59(a); Fed. R. Civ. P. 61; *United States v. Rivera*, 900 F.2d 1462, 1469 (10th Cir. 1990)

reasonably have found intentional deception or, at minimum, knowing and reckless indifference to the rights of others.

That showing would have been sufficient under Rule 50 to permit the claims to proceed to the jury. The evidentiary rulings at issue prevented Plaintiff from making that showing by excluding material evidence bearing directly on intent and punitive damages. Rule 59 exists to remedy prejudice of this kind— where exclusion of probative evidence materially distorts the record on a dispositive issue and the resulting ruling reflects an incomplete evidentiary picture rather than the full scope of proof that should have been considered.

CONCLUSION

The Court's evidentiary rulings removed from the trial record highly probative evidence of intent, operational pattern, and witness credibility necessary to evaluate Plaintiff's fraud and punitive damages claims. Those rulings materially affected both the jury's ability to assess the evidence and the Court's Rule 50 determination. Because a reasonable jury could have found fraud and punitive liability on a complete record, and because the evidentiary errors that depleted the record independently contributed to the Rule 50 ruling, Plaintiff respectfully requests a new trial limited to fraud and punitive damages pursuant to Fed. R. Civ. P. 59(a).

DATED 5/14/2026                 Eric Stephenson
                                _____
                                *Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 5/14/2026 I served the foregoing MOTION FOR NEW TRIAL to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*