Mark A. Nickel (14082)
Kyle C. Thompson (11424)
J. Tyler Martin (13551)
Charles W. Brown Jr (19386)
**GORDON REES SCULLY MANSUKHANI, LLP**
15 W. South Temple St., Suite 1600
Salt Lake City, Utah 84101
(801) 204-9989
mnickel@grsm.com
kcthompson@grsm.com
tymartin@grsm.com
cbrownjr@grsm.com

*Attorneys for Defendants Rob Kolkman and Constable Kolkman, LLC*

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH – CENTRAL DIVISION**

| | |
|---|---|
| CHARLES YOUNG,<br><br>Plaintiff,<br><br>v.<br><br>MICHAEL W. ERICKSON, UTAH COUNTY CONSTABLE'S OFFICE, ROB KOLKMAN, CONSTABLE KOLKMAN LCC, OFFICE OF THE UTAH COUNTY CONSTABLE, LLC., UTAH PROCESS INC., THE CHERRINGTON FIRM, and JOHN DOES 1-5,<br><br>Defendants. | **DEFENDANTS ROB KOLKMAN AND CONSTABLE KOLKMAN LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES [ECF NO. 199]**<br><br>Civil No. 2:23-cv-00420<br><br>Judge: Ted Stewart<br><br>Magistrate Judge: Cecilia M. Romero |

Defendants, Constable Kolkman LLC and Rob Kolkman, by and through counsel, respectfully submits this Opposition to Plaintiff's Motion for Attorney's Fees [ECF 199]. For the reasons set forth below, the Court should deny or substantially reduce Plaintiff's requests to preclude evidence and argument regarding Defendants' understanding of the law.

## RELIEF REQUESTED AND GROUNDS

Constable Defendants respectfully request the Court deny Plaintiff's Motion for attorney's fees and the recovery of expenses. The Motion does not appropriately portray the procedural and factual history of the case nor the degree of success on Plaintiff's claim, an essential element in the consideration of the reasonableness of attorney's fees.

Under the FDCPA, a plaintiff who prevails in a "successful action" is entitled to "*a reasonable attorney's fee* as determined by the court." 15 USCA § 1692k. In the 10th Circuit, courts use the lodestar method—reasonable hours expended multiplied by a reasonable hourly rate—as the starting point, and then may adjust the award *based on the degree of success obtained*. Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098 (2010) Hensley v. Eckerhart, 461 U.S. 424 (1983) (emphasis added.

**The FDCPA's Fee-Shifting Provision**

The FDCPA mandates that in "the case of any successful action to enforce the foregoing liability, the costs of the action, together with a reasonable attorney's fee as determined by the court" be awarded to the plaintiff. 15 USCA § 1692k This fee-shifting provision serves to incentivize private enforcement of the FDCPA—a consumer protection statute designed to eliminate abusive debt collection practices. 15 USCA § 1692 Because individual FDCPA claims typically involve modest statutory damages capped at $1,000, Congress designed the statute so that the plaintiff's fees are determined separately from any damages calculation, allowing attorneys' fees to exceed actual damages.

However, the fee award must be ***reasonable***. The statute does not mandate fee awards equal to the lodestar amount in every case. As established by the Supreme Court in *Hensley v. Eckerhart*, "the most critical factor is the degree of success obtained." Hensley v. Eckerhart, 461 U.S. 424 (1983) This principle, imported wholesale into FDCPA cases by district courts within the 10th Circuit, forms the crux of the analysis when fees vastly exceed damages. Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011)

The 10th Circuit expressly affirmed the use of the lodestar method in FDCPA fee disputes in Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098 (2010) The court endorsed the approach of "methodically proceeding through a calculation of the lodestar amount pursuant to *Hensley v. Eckerhart* and relevant Tenth Circuit precedent applying *Hensley*." Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098 (2010). The lodestar—the number of hours reasonably expended multiplied by a reasonable hourly rate—"produces a presumptively reasonable fee that may in rare circumstances be adjusted to account for the presence of special circumstances." Anchondo v. Anderson, Crenshaw & Associates, L.L.C., 616 F.3d 1098 (2010)

The presumptive validity of the lodestar does not immunize it from downward adjustment when the plaintiff achieves only limited success. The 10th Circuit in *Flitton v. Primary Residential Mortgage, Inc.* clarified that courts must make a "qualitative assessment to determine what less-than-perfect results are 'excellent,' justifying full recovery, or to what extent plaintiffs' 'limited success' should effect a reduction in the lodestar." Flitton v. Primary Residential Mortg., Inc., 614 F.3d 1173 (2010) There is "no

precise rule or formula" for this determination, and "the district court necessarily has discretion in making this equitable judgment." Hensley v. Eckerhart, 461 U.S. 424 (1983)

## Limited Success and the Degree-of-Success Analysis

In the 10th Circuit, a plaintiff's recovery of $4,000 where a far greater recovery was presumably sought (or implied by the rejection of a $100,000 settlement offer and counter demand of $135,000, inclusive of all damages, attorneys' fees and costs to only the first party to accept) would almost certainly be characterized as "limited success" warranting a downward lodestar adjustment. District courts within the circuit apply the three-part framework drawn from *Farrar v. Hobby* and adopted by the 10th Circuit in *Brandau v. Kansas* to assess "the relevant indicia of success": (1) the difference between the judgment recovered and the recovery sought; (2) the significance of the legal issue on which the plaintiff prevailed; and (3) the public purpose served by the litigation. Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011)

In *Obenauf v. Frontier Financial Group, Inc.*, a district court within the 10th Circuit applied this exact framework in an FDCPA case. Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011) There, the plaintiff obtained only $150 in emotional distress damages—"less than one-fortieth of the reward he sought"—leading the court to reduce the lodestar from $4,883.25 to $2,500. The court found that the plaintiff "established 'at most a technical violation' of the FDCPA," did not "clarify the meaning of the FDCPA or protect other parties' rights," and his lawsuit "did not resolve a significant issue and served little if any public purpose." Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011) Such is the case here, Plaintiff established at the very most

a technical violation of the FDCPA.  The court expressly held that the FDCPA "does not mandate a fee award in the lodestar amount" and that when "a plaintiff has achieved only partial or limited success, the district court, in calculating an appropriate fee award, 'may simply reduce the award to account for the limited success.'" Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011) (quoting *Hensley*, 461 U.S. at 436–37). In this case, Plaintiff obviously assumed that making a settlement offer of $135,000 that could only be accepted by the first party to do so was indicia that his claim was worth well beyond double that amount and that a party who accepted was getting a deal. The effort was in bad faith seeking a double recovery from the parties. His ultimate damages award is now 1.5% of what he sought immediately prior to trial. His degree of success can only result in a similar reduction to his fees.

Applied to a near $160,000 fee request where the plaintiff recovered only $4,000 a ratio of 3,896% increase from his client's damages award—this court must view this as a case of extreme fee-to-recovery disproportion warranting significant reduction. While the $4,000 recovery is more substantial than the nominal recoveries in *Obenauf* (where $150 was obtained) or *O'Connor v. Check Rite, Ltd.* (where only $0.01 was recovered), O'Connor v. Check Rite, Ltd., 973 F.Supp. 1010 (1997) the staggering ratio of fees to damages, combined with the rejection of a $100,000 settlement offer, powerfully supports a substantial downward adjustment.


Plaintiff's degree of success must be understood in context, Plaintiff rejected an offer of judgment from Defendant Erickson of $20,000, then rejected additional universal offers of $35,000, $80,000 and ulti$100,000.*See* **Exhibit A** attached hereto. To which

he responded: "As of today, my attorney's fees and costs far exceed $100,000 and will continue to increase through trial and post-trial proceedings." Specifically his demand noted:

To provide your clients a final opportunity to resolve this matter and avoid the risks inherent in trial, I extend the following offer to your client:

- Amount: $135,000, inclusive of all damages, attorneys' fees, and costs.
- Individual Acceptance: This offer is extended to each defendant individually and may be accepted by either defendant. This offer is made separately as to each defendant and is not a joint or global settlement demand. If one defendant accepts, the offer is withdrawn as to the remaining defendant upon notice of acceptance.
- Resolution Structure: Any resolution will include factual admissions sufficient to support resolution of the claims asserted, including fraud and FDCPA violations.
- Fee Exposure: Because the claims and legal work are intertwined, Plaintiff will seek recovery of the full amount of reasonable attorneys' fees as permitted by law, without allocation among defendants.

This offer expires today, April 16, 2026, at 5:00 p.m.

See Exhibit B.

Plaintiff valued his claim, at the very least well in excess of double his $135,000 demand as he noted that it would be revoked from the other defendants once it was accepted by any defendant. Evidence that the claim was not being pursued in his client's best interest but by his effort to recover his fees from multiple parties. Then at trial he asked the jury for a lesser amount of $80,000, and ultimately judgment on the jury verdict was limited to only $4,000.00. Mr. Stephenson now requests a windfall of $155,877.50 to be awarded to him directly. The fee demand here can survive in only a significantly reduced form—particularly as to post-offer fees—because the plaintiff's limited degree of success, especially in light of the rejection of a very favorable settlement offer weigh heavily against awarding the full lodestar.

In the 10th Circuit, a plaintiff's recovery of $4,000 where a far greater recovery was presumably sought (or implied by the rejection of a $100,000 settlement offer and counter demand of $135,000, inclusive of all damages, attorneys' fees and costs to only the first party to accept) may be generously characterized as "limited success" warranting a downward lodestar adjustment.

Further, Plaintiff established at the very most a technical violation of the FDCPA. The court expressly held that the FDCPA "does not mandate a fee award in the lodestar amount" and that when "a plaintiff has achieved only partial or limited success, the district court, in calculating an appropriate fee award, 'may simply reduce the award to account for the limited success.'" Obenauf v. Frontier Financial Group, Inc., 785 F.Supp.2d 1188 (2011) (quoting Hensley, 461 U.S. at 436–37). Here, the plaintiff rejected a $100,000 settlement offer—40 times the ultimate $2,500 recovery. The magnitude of this disparity is extraordinary.

Further, Plaintiffs fees requests can only survive in significantly reduced form, if at all as he was not successful on the claims of Fraud and Punitive damages and cannot recovery fees incurred in the pursuit of those claims. A substantial amount of fees are associated with pursuit of claims against Mountain Land Collections, a party which settled out of this case and those fees cannot be recovered from the Constable Defendants. Finally, the pleadings and discovery requests are duplicative and mirror those used in prior cases brought by Mr. Stephenson and fees cannot be awarded for duplicative work. Constable Defendants specially address each billing See Exhibit C.

Plaintiff's rejection of a settlement offer exceeding his ultimate awarded damages of $4,000 this court should: (1) award only pre-offer fees and substantially reduce or deny post-offer fees; (2) reduce the overall lodestar downward to reflect the plaintiff's limited success; and (3) award no fees at all in relation to claims of fraud, punitive damages, and work associated with Mountain Land Collections.

### *A Reduction to Plaintiff's Alleged Hourly Rate*

Utah federal courts impose strict evidentiary requirements for both establishing and challenging attorney fee rates. The District of Utah established in *Parker v. CitiMortgage, Inc.* that fee applicants must "produce satisfactory evidence—in addition to the attorney's own affidavits—that the requested rates are in line with those prevailing in the community for similar services by lawyers of reasonably comparable skill, experience and reputation" (Parker v. CitiMortgage, Inc., 987 F.Supp.2d 1224 (2013). The court specified that acceptable evidence includes "affidavits of other local lawyers who are familiar both with the skills of the fee applicants and more generally with the type of work in the relevant community" or "other satisfactory evidence of the prevailing market rate, e.g., bar association or law journal surveys" (Parker v. CitiMortgage, Inc., 987 F.Supp.2d 1224 (2013).

Plaintiff concludes, as defendants concur, that the hourly rate is the prevailing market rate *for paying clients*, but Plaintiff provides no outside sources justifying his alleged rates. As referenced by *Leavitt*, other "satisfactory evidence", includes affidavits of other counsel "in the relevant community," but also could include "satisfactory evidence of the prevailing market rate….bar association or law journal surveys.  In this instance, Plaintiff's counsel provided no such evidence. Here, the relevant legal surveys catalogue a much lower rate. Clio provides a legal trends report on attorney hourly rates nation-wide. *See Exhibit D*. Utah, as enumerated therein generally, has attorneys' hourly rates of $291/hour. The report further breaks down attorneys' rates by area of law, noting an hourly rate of $320 for collections law and $327 for civil litigation attorneys, both relevant to this case.

In this instance, the Plaintiff has alleged that he charges his client $450 per hour. He provides no proof of such a fee structure or any fee agreement which could be used for reference. Recoverable fees should not be based on fees not actually charged or incurred.

**Reduced Billing Entries**

In addition to the Parker analysis noted above, the court established in *David C. v. Leavitt*, a standard for determining relevant attorney's fees and rates where it was noted that courts must distinguish "'raw' time from 'hard' or 'billable' time to determine the number of hours reasonably expended" by asking: "(1) Was overall billing judgment exercised? (2) Was the time spent on each task reasonable? (3) Would the tasks be billed to a paying client? (4) Was non-productive time deleted? (5) Was duplicative time deleted?" (David C. v. Leavitt, 900 F.Supp. 1547 (1995)]. In this instance, neither defendant nor the court has been provided with Plaintiff's fee agreement, there has been no verification that is or has been obligated to pay his attorney's hourly rate of $450.00. It is very unlikely that any of Plaintiff's counsel's tasks would be billed to a paying client. And this instance the likelihood that the rejection of significant settlement offers were driven, not by the client's best interest, but continued litigation was the result and expectation that attorney's fees would be fully recovered. Defendants continued to request verification that the settlement offers were presented to Plaintiff with no response. There is nothing reasonable about the windfall he requests in a case that had minimal discovery, duplicative pleadings and work from other similar prior cases.

### *Plaintiff's Travel Time Must Be Reduced*

"[U]nless it is demonstrated that work was performed during time spent traveling, that time is generally not compensable." Ramos, 632 F.Supp. at 381. <u>David C. v. Leavitt</u>, 900 F. Supp. 1547, 1561 (D. Utah 1995). Even if work is performed during travel it must be reduced, <u>Keyes, 439 F.Supp. at 409</u> (compensating at below the normal rate in consideration of "lessened legal efficiency"). In Keyes, for example, the trial court compensated at 50% of normal rate for work done while in flight. Id. Likewise, in <u>Smith v. Freeman, 921 F.2d 1120 (10th Cir.1990)</u>, the court found "no abuse of discretion in the trial court's determination that an attorney's driving time, while necessary, is essentially unproductive and, therefore, compensable at a reduced hourly rate." <u>Id. at 1122</u> (allowing compensation at 25% of normal rate for driving time).

### CONCLUSION

Plaintiff's Motion for Attorney's Fees and the Recovery of Costs must be denied, or in the very least substantially reduced to reflect the actual success of his claims.

**DATED** this 19th day of May, 2026.

**GORDON REES SCULLY MANSUKHANI, LLP**

*/s/ J. Tyler Martin*
Mark A. Nickel
Kyle C. Thompson
J. Tyler Martin
Charles W. Brown Jr.

*Attorneys for Defendants Rob Kolkman and Constable Kolkman LLC*

**CERTIFICATE OF SERVICE**

I hereby certify that on May 19, 2026, a copy of the foregoing **DEFENDANTS ROB KOLKMAN AND CONSTABLE KOLKMAN LLC'S OPPOSITION TO PLAINTIFF'S MOTION FOR ATTORNEY'S FEES** was filed electronically with the Clerk of the Court using the Court's CM/ECF electronic filing system, which will send an electronic copy of this filing to all counsel of record.

 /s/ J. Tyler Martin