Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br><br>    Plaintiff,<br><br>vs.<br><br>MICHAEL ERICKSON, *et al.*,<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES**<br><br>Case Number: 2:23-cv-00420<br><br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |

Plaintiff respectfully submits this Reply Memorandum in Support of his request for an award of his attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3).

INTRODUCTION

The jury entered judgment against all three Defendants for violating the FDCPA and awarded the maximum statutory damages and actual damages—a finding that Defendants' conduct caused tangible harm. Defendants now ask this Court to reduce the fee award that Congress made mandatory when a consumer prevails even though the fees incurred were the direct result of Defendants' decision to litigate this case through discovery, dispositive motions, reconsideration, and a three-day jury trial. Their arguments rest on a proportionality standard the Supreme Court has rejected, a Rule 68 offer that does not limit attorney's fees under the FDCPA, personal circumstances that are irrelevant to the lodestar analysis, and settlement communications that do not

provide a basis for reduction. None of those arguments withstands scrutiny. The requested rate is reasonable, the hours expended were necessary, and the result obtained was substantial. The Court should award the full amount requested.

ARGUMENT

**Plaintiff's hourly rate is the reasonable prevailing market rate**

Plaintiff established his rate of $450 an hour was reasonable. In response, Defendants offered nothing meaningful to overcome that showing. Instead, they asked this Court to depart from the well-established lodestar calculation that governs what is considered reasonable. Under the lodestar, the relevant inquiry is whether the requested rate reflects the prevailing market rate for similar services performed by lawyers of comparable skill, experience, and reputation.[1]

Here, Magistrate Judge Oberg already approved a $450 hourly rate for Plaintiff's counsel in an FDCPA action involving these same Defendants.[2] The court did so after an analysis of Plaintiff's counsel's experience and the court's familiarity with prevailing market rates in Utah.

The requested rate is also consistent with counsel's prior fee awards where he was approved at a rate of $400 hourly in 2021 and 2022.[3] That $50 increase over a four to five year period is consistent with ordinary market adjustments and counsel's additional experience gained in that time.

Recent updates to Utah's statutory fee award also establish Plaintiff's counsel's rate is reasonable. Under Rule 73 of the Utah Rules of Civil Procedure,

---

[1] *United Phosphorus, Ltd. v. Midland Fumigant, Inc.*, 205 F.3d 1219, 1234 (10th Cir. 2000)
[2] *Berry v. Kolkman,* No. 2:24-cv-00705, 2026 U.S. Dist. LEXIS 117247 at *6 (D. Utah May 27, 2026)
[3] *See Vitelli v. Medicredit, Inc.*, No. 1:22-cv-00066, 2022 U.S. Dist. LEXIS 205613, at *12 (D. Utah Nov. 10, 2022)(unpublished); *Christensen v. Johnson Smith & Assocs.*, No. 2:19-cv-00676, 2021 U.S. Dist. LEXIS 3694, at *19 (D. Utah Jan. 7, 2021)(unpublished)

the hourly rate of $475 is the presumptive hourly rate any attorney, regardless of experience, can request without providing a supporting affidavit.[4] Although Rule 73 does not control the Court's lodestar analysis, it sets in stone the Utah Supreme Court's assessment of prevailing rates in the state's legal market. Against that backdrop, Plaintiff's requested rate of $450 per hour for an attorney with more than two decades of experience and a specialized federal consumer-protection practice is well within the range of objectively reasonable.

Defendants' only substantive response to Plaintiff's rate evidence is a portion of an undated Clio "legal trends report." Judge Oberg already considered and rejected that same report in *Berry*, explaining that it does not reliably account for differences in geography, experience, or practice area.[5] Nor does it consider the prevailing market rate for FDCPA litigation in this community by attorneys of "comparable skill, experience, and reputation" to Plaintiff's counsel.

Defendants also did not submit any evidence regarding the rates charged by their own counsel or other attorneys performing comparable work. As large law firms with multiple attorneys and support staff, Defendants were well-positioned to offer evidence concerning prevailing market rates if they believed Plaintiff's requested rate exceeded them. Because they chose not to do so, Plaintiff's evidence of the prevailing market rate stands unrebutted.

Plaintiff's requested rate is supported by his sworn declaration, recent decisions from this Court, prior fee awards, and the Utah Supreme Court's valuation of appropriate market rates. Defendants provided nothing to rebut that evidence. On this record, a rate of $450 per hour is objectively reasonable.

---

[4] Utah R. Civ. P. 73(f)(1)
[5] *Berry*, at *5

**The hours incurred were reasonably and necessarily incurred**

The hours Plaintiff's counsel expended were a direct and foreseeable consequence of Defendants' aggressive litigation efforts. Defendants filed two motions to dismiss, cross-moved for summary judgment, opposed discovery to the point that Plaintiff was required to file both a motion to compel and a motion to deem requests for admission admitted, sought reconsideration on the eve of trial in a manner that prompted an order to show cause from the Court, and ultimately proceeded through a three-day jury trial. The Tenth Circuit has addressed this circumstance directly. A defendant "cannot litigate tenaciously and then be heard to complain about the time necessarily spent by the plaintiff in response."[6]

Segregation of claims that arose from the same nucleus of operative facts is also improper, if not impossible. Plaintiff prevailed on his FDCPA claims and those claims "involve a common core of facts or [were] based on related legal theories" as his claim for fraud.[7] That claim arose from the same course of conduct and was supported by the same witnesses, documents, and discovery.[8] The two claims are therefore inseparably intertwined with the FDCPA claims on which Plaintiff prevailed through a common core of facts and related legal theories.[9] "Where a lawsuit consists of related claims, a plaintiff who has won substantial relief should not have his attorney's fee reduced simply because the district court did not adopt each contention raised."[10]

---

[6] *Case v. Unified Sch. Dist. No. 233*, 157 F.3d 1243, 1253–54 (10th Cir. 1998) (*quoting City of Riverside v. Rivera*, 477 U.S. 561, 580 n.11 (1986))

[7] *Hensley v. Eckerhart*, 461 U.S. 424, 103 S. Ct. 1933, 435 (1983)

[8] Defendants' attempt to treat the dismissal of punitive damages as a failed claim is wrong. Punitive damages are a remedy, not an independent cause of action, and the work on that request is inseparable from the fraud claim.

[9] *Robinson v. City of Edmond*, 160 F.3d 1275, 1283 (10th Cir. 1998)

[10] *Hensley*, 461 U.S. at 440; *see also Spulak v. K Mart Corp.*, 894 F.2d 1150, 1160 (10th Cir. 1990)

The results obtained further confirm the reasonableness of the hours expended. The jury found all three Defendants liable and awarded both the maximum statutory damages available under the FDCPA and actual damages. That only happened because of the time Plaintiff's counsel put into this case. The litigation also required resolution of issues not previously resolved concerning the application of the FDCPA to constables engaged in debt-collection activity. Defendants themselves previously emphasized the broad public significance of those issues in arguing that the Utah Legislature amended Utah law in response to this case.[11] That characterization is difficult to reconcile with Defendants' current position that this case was now somehow of limited public significance.

Plaintiff's counsel also exercised meaningful billing judgment. Travel time was billed at 50%. Clerical tasks were billed consistent with a paralegal rate at $125 per hour. Multiple entries were entirely omitted. Defendants, meanwhile, do not identify a single time entry that is excessive, duplicative, or otherwise unrecoverable. They offer no expert testimony, no alternative lodestar calculation, and no comparison to any analogous case. Their generalized objection to the overall number of hours, unsupported by any specific challenge to the billing records, and without producing their own billing records for comparison, is insufficient to overcome the presumptive reasonableness of the lodestar.[12]

**Rule 68 does not apply**

Erickson invokes his February 18, 2026 Rule 68 Offer as a basis for reducing Plaintiff's fee award. The argument fails for multiple independent reasons. First and foremost, Rule 68 only shifts items that qualify as "costs" under

---

[11] *See* Motion to Reconsider at 10–13 (ECF No. 168)
[12] *Robinson*, 160 F.3d at 1281

the governing substantive statute.[13] The FDCPA does not define attorney's fees as a cost. Instead, it separately authorizes recovery of "the costs of the action, together with a reasonable attorney's fee."[14] By treating costs and attorney's fees as distinct categories of recovery, Congress made clear that attorney's fees are not costs under the FDCPA.[15] Because Rule 68 reaches only costs, it does not affect Plaintiff's entitlement to a reasonable attorney's fee under § 1692k(a)(3).[16]

Even if Rule 68 could affect attorney's fees in an FDCPA action, Erickson's argument still fails. The comparison would not be between the offer and the jury award in isolation. Rule 68 requires the Court to compare the offer to the *judgment finally obtained*, which includes every component of recovery authorized by § 1692k(a)(3).[17] Applying that framework in an FDCPA case, this Court held that a Rule 68 offer does not trigger cost-shifting where the combined total of damages and pre-offer fees and costs exceeds the offer.[18]

The same outcome is unavoidable here. Erickson drafted his Rule 68 offer to be *expressly inclusive* of all damages, costs, interest, and attorney's fees. By the date of that offer, Plaintiff had already incurred well-over $20,000 in pre-offer fees and costs. Once statutory damages, actual damages, taxable costs, and the mandatory fee award are included, the judgment obtained is far greater than the offer Erickson made. Because the offer was exceeded by the judgment in every relevant respect, Rule 68's cost-shifting mechanism simply does not apply.

---

[13] *Marek v. Chesny*, 473 U.S. 1, 9 (1985)

[14] 15 U.S.C. § 1692k(a)(3)

[15] *Paz v. Portfolio Recovery Associates, LLC*, 924 F.3d 949, 953 (7th Cir. 2019)(holding that Rule 68's cost limit does not apply to FDCPA fee awards because the statute treats fees separately)

[16] *Valencia v. Affiliated Grp., Inc.*, 674 F. Supp. 2d 1300, 1304–05 (S.D. Fla. 2009)

[17] *See Marek*, 473 U.S. at 9

[18] *Anastasion v. Credit Serv. of Logan, Inc.*, No. 2:08-CV-180, 2012 U.S. Dist. LEXIS 58886, at *5–6 (D. Utah Apr. 26, 2012) (Stewart, J.)

The Kolkman Defendants' argument is untenable. They made no Rule 68 offer whatsoever, yet they ask the Court to limit Plaintiff's fees as if Erickson's offer somehow conferred Rule 68 protection on them. The text of Rule 68 forecloses that position. The rule applies only where "the offeror" obtains a judgment less favorable than the offer.[19] Because the Kolkman Defendants never served an offer of judgment, they cannot invoke Rule 68's cost-shifting provisions. Nothing in Rule 68 authorizes a non-offering defendant to piggyback on another party's offer.

**Erickson's ability to pay is irrelevant**

Section 1692k(a)(3) requires an award of reasonable attorney's fees to a prevailing consumer. The statute does not condition that award on a defendant's financial resources, insurance coverage, or ability to satisfy the judgment. Erickson nonetheless asks the Court to reduce the fee award because he personally funded his defense and lacks insurance coverage in this matter.[20] On its face, that argument asks the Court to shift the financial consequences of Defendants' choice to the prevailing Plaintiff. Nothing in the FDCPA authorizes that result. Whether Erickson paid his own attorney's fees and cost "*directly out of his own pocket*" is irrelevant.[21]

The lodestar inquiry focuses on the reasonableness of the fee requested—whether counsel expended a reasonable number of hours at a reasonable rate in light of the results obtained. A defendant's personal payment arrangements, insurance coverage, or litigation expenses do not bear on any component of that

---

[19] Fed. R. Civ. P. 68(d)
[20] Memorandum in Opposition to Motion for Attorney's Fees at 3 (ECF No. 204)
[21] *Id*. (double emphasis in original)

analysis. Once Plaintiff prevailed, § 1692k(a)(3) directs the Court to award a reasonable attorney's fee. Nothing in the statute suggests that the amount of that award varies depending on how the Defendant chose to fund his defense.

Erickson's argument also lacks a coherent evidentiary foundation. He does not submit a financial declaration, tax returns, income information, asset disclosures, debt information, or any other competent evidence of financial condition. Instead, he relies on the fact that he has paid his own attorneys and that he has no insurance coverage for this litigation. Those facts describe how he has chosen to fund his defense, not whether he is unable to satisfy a fee award or otherwise entitled to a reduction under § 1692k(a)(3).

Erickson also never explained why his funding choices are legally relevant to the fee analysis. Nor does Erickson identify any authority permitting a court to reduce a mandatory statutory fee award based on a defendant's litigation expenses or insurance status. Those circumstances may explain why Erickson would prefer a reduced fee award. They do not provide a legal basis for one. On this record, there is no evidentiary or legal foundation for reducing Plaintiff's fee request under § 1692k(a)(3).

**Defendants' reliance on settlement communications should be rejected**

Plaintiff objects to Defendants' use of settlement communications under Rule 408 of the Federal Rules of Evidence. Rule 408 bars the use of settlement communications "to prove or disprove the validity or amount of a disputed claim."[22] Defendants nonetheless present settlement discussions to disprove both the validity and amount of the disputed claim to prevent Plaintiff from obtaining

---

[22] Fed. R. Evid. 408(a)

"the full value of his fees."[23] That is precisely the inference Rule 408 prohibits. The Court should therefore disregard any evidence of settlement discussions between the parties. The arguments that follow are made in the alternative if this Court overrules this objection.

Even if the Court considers the parties settlement discussions, it does not inform the lodestar analysis and provides no basis for reducing the fee award. The lodestar inquiry focuses on whether the hourly rates are consistent with the prevailing market, whether the hours expended were reasonable, and whether the results obtained justify the time spent.[24] Settlement discussions do not bear on any of those questions. They reflect litigation risk assessment and compromise dynamics at a particular stage of the case, not the objective market value of legal services or the reasonableness of the work performed. Incorporating settlement history into the lodestar analysis substitutes negotiation posture for the market-based inquiry *Anchondo* requires.

Settlement communications are also not a reliable indicator of case value as ultimately determined through litigation. They are made in the context of uncertainty, before full development of the record, and for purposes of compromise rather than adjudication. They reflect what parties were willing to accept or pay under conditions of incomplete information—not what the claims were actually worth. Contrarily, the lodestar is an objective standard. It measures the market value of legal services against the result actually achieved. Settlement negotiations are the opposite of objective. They are tactical, positional, and frequently shaped by factors that have nothing to do with the merits—insurance

---

[23] Memorandum in Opposition to Motion for Attorney's Fees at 2 (ECF No. 204); *See also* Memorandum in Opposition to Motion for Attorney's Fees at 4-7 (ECF No. 207)
[24] *Anchondo v. Anderson, Crenshaw & Assocs., LLC*, 616 F.3d 1098, 1102 (10th Cir. 2010)

coverage, litigation fatigue, risk aversion, and the cost of continued defense. Importing that inherently subjective process into an objective market-based inquiry distorts the lodestar framework and subverts the protections of Rule 408. The parties' pretrial settlement positions do not provide a principled basis for assessing the reasonableness of the fees incurred to obtain that result.

Allowing settlement communications to be repurposed as evidence of fee excessiveness would also undermine both the FDCPA's fee-shifting structure and the policy underlying Rule 408. Congress made attorney's fees mandatory under 15 U.S.C. § 1692k(a)(3) to ensure that consumers can vindicate federal rights through counsel despite the economic realities of individual litigation. Using settlement demands as a post hoc mechanism to reduce fees would distort that framework and penalize precisely the litigation activity the statute is designed to encourage.

It would also undermine the policy reflected in Rule 408 to foster "complete candor" between parties.[25] If settlement demands can later be used to argue that a prevailing plaintiff overvalued his case and therefore deserves a reduced fee award, rational litigants will adjust their conduct accordingly. Plaintiffs' counsel will have every incentive to avoid meaningful settlement discussions, withhold candid assessments, refuse to communicate specific settlement figures, or insist that negotiations occur only through formal Rule 68 offers. That result is directly contrary to the policy Rule 408 was enacted to advance. A rule designed to encourage candid settlement negotiations should not be converted into a tool for punishing the very candor it seeks to promote.

---

[25] 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5314, at 286 (1980)

CONCLUSION

Plaintiff is the prevailing party and the violations were not technical. The jury found Defendants liable under the FDCPA and awarded the maximum statutory damages permitted with additional amounts for actual damages.

Plaintiff's hourly rate is also reasonable and has already been approved in this District. The hours expended were likewise reasonable and incurred in response to Defendants' litigation strategy which ultimately required a trial.

Defendants have identified no evidence or authority warranting any reduction. Neither Rule 68, Erickson's personal payment arrangements, nor settlement communications provide a basis for reducing the fee award. On the contrary, the lodestar governs and none of those considerations inform its analysis.

For these reasons, Plaintiff respectfully requests that the Court award the full amount of fees requested.

DATED 6/9/2026

Eric Stephenson
*Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 6/9/2026 I served the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR ATTORNEY'S FEES to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*