Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br><br>      Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN, CONSTABLE KOLKMAN LLC, AND MICHAEL ERICKSON,<br><br>      Defendants. | **REPLY MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL**<br><br>Case Number: 2:23-cv-00420-TS<br>Judge: Ted Stewart |

Plaintiff respectfully submits this Reply Memorandum in support of his request for a new trial on his fraud and punitive damages claims pursuant to Fed. R. Civ. P. 59(a).

### INTRODUCTION

The Court's Rule 50 ruling found insufficient evidence of intent as to Erickson and no false statement from the Kolkman Defendants. If allowed, the excluded evidence would have established those elements. The excluded witnesses, the operational evidence, Erickson's prior sworn testimony, and the Block Inc. records each addressed these issues from a different perspective. Individually and collectively, their exclusion left the jury without important context and evidence bearing on the issues that ultimately resulted in judgment as a matter of law. A new trial limited to fraud and punitive damages is therefore warranted.

ARGUMENT

I.    THE EXCLUDED EVIDENCE WENT DIRECTLY TO THE ONLY ELEMENTS THE COURT FOUND LACKING

Rule 61 only requires the Court to disregard errors that do not affect the substantial rights of the parties.[1] It does not permit the Court to disregard errors that do affect the substantial rights of the parties, which is what occurred here. The Court's Rule 50 ruling found insufficient evidence of intent as to Erickson and no false statement as to the Kolkman Defendants, but both determinations reflect only the evidentiary record the jury was permitted to consider. It does not reflect the record that would have been developed had the excluded evidence been admitted.

Percipient witnesses would have testified that Defendants' threatened sales were never carried out across thousands of comparable collection matters regardless of whether payment was made. That testimony goes directly to whether the threats reflected an intention to act or a practice that was not implemented as represented. The operational and financial evidence that was excluded would have shown the scale and financial benefit of that conduct. Erickson's prior sworn testimony that this Court excluded would have directly contradicted his claimed inability to recall the same conduct at trial. The Block Inc. records of payments collected would have reflected the transactions themselves. Taken together, the exclusions limited the jury's access to evidence directly bearing on intent and Kolkman's involvement—the only elements the Court identified as unsupported. Under Rule 61, that limitation affected Plaintiff's substantial rights because it went to the core issues on which judgment turned.

II.    THE EXCLUDED PERCIPIENT WITNESSES WERE THE MOST DIRECT EVIDENCE OF DEFENDANTS' INTENT AND KOLKMAN'S INVOLVEMENT

The Court should not have excluded testimony from four percipient witnesses, Tara Peretto, Elizabeth Hernandez, Kendall Thomas, and Heidi Cordero. Each received the same

---

[1] Fed. R. Civ. P. 61

Notice of Sale and went through the same collection process as Young. The testimony was therefore admissible under Rule 404(b)(2) to show intent, knowledge, plan, and absence of mistake. That testimony also would have clarified Kolkman's involvement in the scheme.

When intent is disputed, evidence that Defendants repeatedly used the same threatened-sale process for similarly situated debtors is not collateral. It shows how the process actually operated. A single instance where a debtor pays before a sale can be completed is consistent with different explanations. But evidence that the same process was used repeatedly without resulting in any executed sales supports the conclusion that Defendants' intent was to generate payments when mailing their letters rather than scheduling a sale as claimed. That inference goes directly to the intent element the Court later found lacking.

Defendants' argument that each witness's individual financial circumstances, including separate debts, writs, and exemptions, make their experiences different from Young's and therefore not probative of intent, knowledge, plan, and absence of mistake misses the point. The relevant question has nothing to do with the witness's individual circumstances. It is whether Defendants ever intended to carry out the sales they threatened. The details of each debtor's financial condition do not answer that question. The answer comes from the pattern. Defendants used the same notice and threatened the same outcome in thousands of other cases but never followed through with those threats, regardless of whether payment was made.

The testimony was also admissible under Rule 406 as evidence of routine practice. Defendants sent the same form notice to thousands of debtors over more than a decade, threatening the same outcome and process without ever following through. The consistent absence of completed sales is evidence of how the process functioned and why. The excluded witnesses would have described their firsthand experience with that standardized process and confirmed it was consistent and routine and therefore intentional. Defendants argue that separate writs of execution cannot constitute a routine practice because each involves a different debtor.

That argument is demonstrably incorrect. Mailing the same template letter thousands of times over a decade is the definition of a routine practice. The fact that each underlying debt differed changes nothing.

Defendants' mini trial argument is a red-herring. The testimony would have been from a small number of witnesses, each subject to the same collection process, and it was offered for a narrow purpose tied directly to the issues in dispute, including intent, knowledge, plan, and absence of mistake. It would not have expanded the case into collateral disputes but would have provided firsthand evidence of how Defendants' process functioned when applied in practice.

The remaining Rule 403 objections are also not supported by the record. The testimony concerned Defendants' own conduct in materially identical circumstances across repeated applications of the same standardized process. Evidence of that kind does not confuse the issues or mislead the jury. It clarifies what the process was and how it was carried out and gives the jury the factual basis needed to evaluate intent and credibility.

There also would not have been any meaningful delay in allowing these witnesses to testify. Four witnesses briefly describing the same process in similar terms is wholly reasonable in a multi-day trial. Rule 403 is not triggered simply because relevant evidence takes time to present. Rule 403 permits exclusion only where the danger of unfair prejudice, confusion, or delay substantially outweighs probative value. Evidence that goes directly to the elements of the case does not meet that standard.

The magistrate judge's prior discovery ruling does not change the analysis. That ruling concerned document production in discovery. It did not address admissibility of live testimony from percipient witnesses based on their own personal knowledge. The trial court was required to apply Rules 401, 403, 404(b), and 406 at the evidentiary stage, not discovery proportionality standards.

III.    THE OPERATIONAL EVIDENCE SHOWED LACK OF INTENT

This Court excluded the most probative evidence available to prove fraud. It excluded evidence regarding the scale, longevity, and daily operation of Defendants' collection practices that prove they made threats without any intent to carry them out. That evidence was not cumulative, collateral, or otherwise improper.

Erickson testified that he completed one sale over roughly eight years of issuing those notices. Because this Court limited Plaintiff's counsel from probing that issue further, that testimony misled the jury into thinking he actually carried out a sale under the same circumstances at issue in this case. He didn't. In the one sale Erickson claimed to have held, he was acting as a constable rather than a debt collector, he seized a vehicle rather than merely threatening to seize it, and he didn't carry out the sale. That is vastly different from what the excluded evidence would have shown as it demonstrates a separate and distinct process of mailing collection letters demanding payments; threatening to seize and sell individual property such as tools, books, furniture, and other personal items; and negotiating payment plans rather than demanding a lump sum amount. Defendants should not have been permitted to present Erickson's unrelated sale testimony as evidence of intent while Plaintiff was simultaneously restricted from exposing how different that sale was from the collection process at issue here. Indeed, both Defendants testified that they maintained separate businesses so they could handle executions using a different method from their collection operations.

Erickson's testimony looks very different when placed alongside evidence that Defendants issued more than 10,000 Notices of Sale and collected more than $3.5 million during the same period. Without that additional context, the jury was left with a single data point instead of the operational reality behind it. One almost-completed sale out of thousands of threats is not just a statistic. The absence of sales, in its proper context, establishes fraud.

Other excluded evidence would have provided the needed context by showing how the process functioned day to day. Defendants routinely represented multiple sales would be held on the same day, sometimes only minutes apart. A jury could reasonably view that pattern as inconsistent with any real expectation that the sales would occur. The evidence would also have shown that the notices routinely described seizure and sale occurring on the same date even though Utah law requires a 14-day waiting period between those steps. A notice that repeatedly describes a process that cannot legally happen as presented is evidence the threatened sale was not meant to be carried out. Defendants try to reframe this as improper "statistics" evidence that cannot prove fraud. That misses what the evidence actually demonstrated. This was not abstract statistical proof. It was proof of what Defendants did and did not do across thousands of examples. An entrenched system that issues thousands of threats but never carries out those threats speaks directly to intent and credibility.

Defendants contend the operational evidence says nothing about what they intended toward Young specifically. But Young's notice followed the same pattern. He received the same template letters, the same threats, the same workflow, from the same employees reflected in the excluded evidence. There was nothing individual or unique about it. The same process that generated his contact and payments is the same process that generated thousands of others. The jury was nonetheless not allowed to see that full picture and instead only heard fragments without the operational context needed to evaluate intent.

Defendants also suggest that this evidence was presented to the jury through other testimony. That is incorrect. The Court restricted Plaintiff's ability to develop the full scope of the collection operation and to present the underlying records reflecting how it functioned. Isolated references to aggregate figures are not the equivalent of evidence showing the thousands of transactions that produced those figures. The jury may have heard some of the numbers but it was not permitted to see the full picture those numbers reflected.

IV.    ERICKSON'S PRIOR SWORN TESTIMONY WAS ADMISSIBLE AND ITS EXCLUSION WAS PREJUDICIAL

At trial, Erickson testified that he could not recall the volume of writs he processed, the amounts he collected, or the scale of his collection activities. Plaintiff sought to confront that claimed lack of memory with Erickson's prior sworn deposition testimony from a related case involving the same Defendants, the same collection methods, and the same template notices but the Court excluded it. That testimony was admissible for impeachment under Rule 613. Rule 613 permits a party to confront a witness with prior statements that are inconsistent with the witness's trial testimony. A witness's claimed inability to recall material facts is inconsistent with prior sworn testimony describing those same facts in detail. Erickson had previously testified under oath about the scope of the collection operation, the volume of writs processed, and related aspects of the business. When he later testified that he could not recall those matters, Plaintiff was entitled to present the prior testimony so the jury could evaluate the credibility and reliability of his claimed lack of memory.

The testimony was also admissible as substantive evidence under Rule 801(d)(1)(A). That rule provides that a prior statement is not hearsay when the declarant testifies at trial, is subject to cross-examination, and the prior statement is inconsistent with the declarant's testimony and was given under oath in a proceeding. All three elements were satisfied. Erickson testified at trial, he was subject to cross-examination, and his prior deposition testimony was given under oath. Plaintiff therefore should have been permitted to use his prior statements to provide the information he claimed he could not remember. The Tenth Circuit has held that a claimed lack of memory at trial, whether real or feigned, is inconsistent with a prior sworn statement describing the same facts for purposes of Rule 801(d)(1)(A).[2] The fact that the

---

[2] *United States v. McGirt*, 71 F.4th 755, 759-760 (10th Cir. 2023); *United States v. Knox*, 124 F.3d 1360, 1364 (10th Cir. 1997)

deposition was taken in a different proceeding does not change the analysis. Neither Rule 613 nor Rule 801(d)(1)(A) limits admissibility to prior statements taken in the same case.

Defendants argue for exclusion of the deposition because it was not identified in Plaintiff's pretrial disclosures. That argument elevates procedure over substance and ignores the plain language of Rule 26. The deposition was Erickson's sworn testimony about his own conduct in a related proceeding involving the same defendants and the same collection operation. Erickson and his counsel were both well-aware of that testimony. The suggestion that Plaintiff was required to formally disclose to Erickson his own prior sworn statements before using them for impeachment at trial is contrary to the rules. Indeed, Rule 26 expressly resolves the matter as it does not require disclosure of materials used solely for impeachment.[3]

The exclusion was prejudicial. The Court's Rule 50 ruling rested in part on Erickson's trial testimony of his business operations but that testimony went unchallenged despite his prior sworn testimony that rebutted the precise facts he claimed not to recall. A jury presented with Erickson's prior sworn account would have had a materially different basis for evaluating his credibility and intent.

V.      THE BLOCK INC. RECORDS AND RULE 1006 SUMMARY WERE ADMISSIBLE

Block, Inc. produced payment processing records in response to a subpoena and provided a sworn certification from its records custodian establishing that the records were made and kept in the ordinary course of business. That certification satisfied Rules 803(6) and 902(11). No live witness from Block was required.

Plaintiff also prepared a summary exhibit under Rule 1006 to present the contents of those records in a more usable form. The underlying records were voluminous, admissible, and available for inspection. Rule 1006 exists for precisely that circumstance.

---

[3] Fed. R. Civ. P. 26(a)(3)(A)

Whether the records were produced pursuant to a subpoena issued in a different case is irrelevant. The records were created and certified by Block. Their reliability does not depend on the caption appearing on the subpoena that compelled their production. The records concerned the same collection operation at issue here and the same Defendant involved in both actions.

Those records were also not cumulative and were more probative than the trial testimony at issue. At trial, witnesses provided estimates of the amounts they collected. Claiming the underlying records were somehow cumulative of that testimony entirely misses the point. A passing reference to an unverified ballpark estimate is not equivalent to documentary evidence showing the specific underlying transactions and the specific dollar amount at issue. Because the actual records showed the specific dollar amounts, transaction dates, and volume of transactions, it was the best evidence of those issues. Tangible business documentation and financial records are objectively more probative and reliable than self-serving witness testimony.

The Rule 1006 summary was equally probative and reliable. Its data was taken directly from the Defendants' own transaction records and that data was easily verifiable. Whether it was prepared by counsel or a third party makes no difference. Under the plain language of Rule 1006 the only requirements are for the underlying records to be admissible and available for examination. Those requirements were satisfied. If there was any contention otherwise, Defendants should have addressed the matter prior to trial through a motion in limine. But even now, they do not challenge the accuracy of the summary or the underlying records.

The exclusion of both the records and the summary was prejudicial. The Block records were the strongest objective evidence of Defendants' collection practices. Unlike witness testimony, which depended on memory and credibility, the records documented the transactions themselves. They showed the volume of collections generated by the Notices of Sale, the amounts collected, and the total absence of completed sales. The Rule 1006 summary would have allowed the jury to evaluate those records in a usable form. By excluding both, the jury was

left to assess Defendants' practices largely through witness testimony when contemporaneous business records showing what occurred were available and more reliable. That exclusion deprived the jury of highly probative evidence bearing directly on Defendants' intent and Kolkman's direct involvement in the collection process.

## VI.   THE CUMULATIVE EFFECT OF THESE RULINGS WAS NOT HARMLESS

The Court found insufficient evidence of Erickson's intent and no false statement by the Kolkman Defendants. The trial record reflected otherwise. As the Court noted, Andrea Croft testified that, although the Defendants were threatening to seize and sell Plaintiff's property, "the purpose of sending the notice of proposed sale was to encourage the debtor to contact the constables to make arrangements to resolve the debt, including by setting up a payment plan, which was the preferred method of collecting on debts."[4] The evidence therefore permitted a reasonable inference that the purpose of the notices was to generate contact and payment rather than to conduct a sale.

The percipient witnesses would have also addressed how both Defendants used the threatened-sale process to generate periodic payments. The operational and financial evidence would have shown its scale and Kolkman's direct involvement. Erickson's prior sworn testimony bore on those issues and on Defendants' credibility. The Block Inc. records documented the underlying transactions. Viewed individually, these rulings were prejudicial rather than harmless. Viewed together, their effect is even clearer. Because the evidence was excluded, the jury never heard substantial evidence bearing on Defendants' intent and the extent of Kolkman's involvement. The Court's Rule 50 ruling evaluated the record as it existed after those exclusions. But the inquiry under Rule 61 is not whether the truncated record supported judgment. It is whether the result would have been the same had the excluded evidence been admitted.[5] Each

---

[4] Memorandum Decision at 4 (ECF No. 196)
[5] *See Kotteakos v. United States*, 328 U.S. 750, 765 (1946)

category of excluded evidence addressed the precise issue on which judgment was entered. Taken together, it would have given the jury a materially different record on these matters. Under those circumstances, the exclusions affected Plaintiff's substantial rights and warrant a new trial limited to fraud and punitive damages.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court grant a new trial on Plaintiff's fraud and punitive damages claims pursuant to Fed. R. Civ. P. 59(a).

DATED 6/11/2026

Eric Stephenson
*Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 6/11/2026 I served the foregoing REPLY MEMORANDUM IN SUPPORT OF MOTION FOR NEW TRIAL to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*