Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com

*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br><br>    Plaintiff,<br><br>vs.<br><br>ROB KOLKMAN,<br>CONSTABLE KOLKMAN<br>LLC, AND MICHAEL<br>ERICKSON,<br><br>    Defendants. | **REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW**<br><br>Case Number: 2:23-cv-00420-TS<br>Judge: Ted Stewart |

Plaintiff respectfully submits this Reply Memorandum in support of his requests for this Court to vacate its Rule 50(a) ruling on Plaintiff's fraud claim and for punitive damages and to enter judgment as a matter of law in Plaintiff's favor on the fraud claim.

INTRODUCTION

The Court removed Plaintiff's fraud claim and request for punitive damages at the close of Plaintiff's case-in-chief. The jury later found both Defendants liable under the FDCPA based on the same collection conduct. That verdict is consistent with the evidence that contained competing reasonable inferences on intent, falsity, and recklessness. Under Rule 50, those questions belonged to the jury. Accordingly, both the fraud claim and punitive damages request should have been submitted for the jury's determination.

ARGUMENT

I.   THE COURT RESOLVED JURY QUESTIONS AS A MATTER OF LAW

Both oppositions misstate the Rule 50 standard. The question is not whether Plaintiff proved fraud. The question is whether a reasonable jury could have found fraud based on the evidence presented. Those are distinct inquiries.

Judgment as a matter of law is appropriate "only if the evidence points but one way and is susceptible to no reasonable inferences which may support the opposing party's position."[1] In applying that standard, the Court may not weigh competing evidence and must draw all reasonable inferences in favor of the nonmoving party.[2]

Both oppositions disregard that standard and focus on evidence favorable to Defendants while ignoring evidence supporting Plaintiff. Young testified he believed the letters meant his property was at genuine risk of being seized and sold. As a result, he contacted Defendants, entered a payment arrangement, and made multiple payments to stop that sale. When he stopped paying, Defendants still never carried out the threatened sale. Young's account is corroborated by Defendants' own testimony—and together they establish reliance, damages, and the real-world effect of Defendants' representations.

The trial evidence did not point only one way on intent. Defendants argue otherwise but their own testimony refutes them. Erickson testified that only one sale was completed in approximately eight years of sending these notices. Kolkman testified that he never conducted a sale in over 10,000 other cases. Employees of both Defendants testified they know nothing about the sale process

---

[1] *Finley v. United States*, 82 F.3d 966, 968 (10th Cir. 1996)
[2] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

deplete mailing well-over 10,000 Notices of Sale over the years. The sale procedure described in the notices also could not lawfully occur as represented because it is unlawful to sell the property the same day it is seized or to hold the sale at a private location such as Plaintiff's home as indicated.[3] A jury could reasonably consider that testimony, together with the absence of actual sales, in assessing whether the threatened enforcement mechanism was realistically implemented as described in the notices.

Defendants contend that evidence somehow supports a different inference. But that is precisely the point. When evidence supports competing reasonable inferences, the dispute belongs to the jury—not the Court. Substituting its own inference for the jury's is the error Rule 50 exists to prevent.

II.     THE RECORD CONTAINED SUFFICIENT EVIDENCE OF FRAUD

Defendants' argument that Plaintiff failed to prove fraudulent intent applies the wrong standard. The question is not whether the evidence compelled a finding of fraud. The question is whether the record contained evidence from which a reasonable jury could find fraudulent intent, reckless disregard, reliance, and damages. On that standard, the Court was required to draw all reasonable inferences in Plaintiff's favor without weighing competing reasonable inferences against Plaintiff.

The jury heard that Erickson sent Notice of Sale letters for approximately eight years and completed only one sale. Kolkman inherited the same operation, used the same templates, retained the same employees, and conducted no sales despite sending more than 10,000 notices. Employees responsible for

---

[3] Utah R. Civ. P. 64(d)(3)(C); 64E(d); 69B(d)

REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

administering the process could not explain how a sale would occur, what documents would be filed, or how property would be seized, stored, or sold. The debt owner testified that he was unaware of a single sale ever occurring despite assigning hundreds of accounts to Defendants. A reasonable jury could consider that evidence in evaluating whether the threatened sales were realistically intended to occur as represented.

The jury also heard that the Notice of Sale described a procedure that was unlawful. Utah law requires a 14-day waiting period between seizure and sale, but the Notice threatened seizure and sale on the same date.[4] The letter also stated that the sale would be held at Plaintiff's home even though the law requires execution sales to occur in a public location.[5] A jury could consider those discrepancies in evaluating whether the threatened sale was realistically described in the notices.

The record likewise supported a finding of reckless disregard. Under Utah law, fraud may be established where a representation is made recklessly and without regard for its truth.[6] The jury heard evidence that Erickson was previously sued for these same notices and procedures, that Defendants were aware of that lawsuit, and that they nevertheless continued sending the same representations to thousands of consumers. Defendants also continued engaging in identical conduct and making the same threats after this case was filed and this Court determined Defendants were debt collectors under the FDCPA. A reasonable jury could conclude from that evidence that Defendants acted with reckless disregard for the Plaintiff's rights and their own legal obligations.

---

[4] Utah R. Civ. P. 64(d)(3)(C); 64E(d)
[5] Utah R. Civ. P. 69B(d)
[6] *Armed Forces Ins. Exch. v. Harrison*, 2003 UT 14, ¶ 16, 70 P.3d 35

Because the record supports competing reasonable inferences, the dispute is for the jury to decide.[7] The record permitted a reasonable jury to find that Defendants threatened a sale they never intended to carry out and that Young paid because he believed those threats. That is sufficient to preclude judgment as a matter of law.

III.    THE KOLKMAN DEFENDANTS' COMMUNICATIONS COULD NOT BE VIEWED IN ISOLATION

Defendants argue that the Kolkman Defendants made no false statement to Young. That argument isolates individual communications and fails to account for the context in which they were received. The evidence showed that Kolkman inherited an existing collection operation and continued using the same employees, templates, and collection process. Witnesses testified that the transition from Erickson's operation to Kolkman's was seamless. By the time Kolkman contacted Young, Young had already received months of notices threatening seizure and public sale of his personal property and had already made multiple payments to stop that sale. The communications were made after repeated prior notices representing that Young's property was subject to imminent seizure and sale. The later communications used similar letterhead and law-enforcement indicia and instructed Young to contact the office to make payment arrangements.

A reasonable jury could find that Young's response to Kolkman's communications was driven by the same threatened sale and that Kolkman's office continued to reinforce that threat. That finding is consistent with Young's

---

[7] *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000)

REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW

testimony and with evidence that Kolkman continued sending Notice of Sale letters despite conducting no sales.

Whether Kolkman knowingly continued a collection process that conveyed a false impression regarding the likelihood of sale—or acted with reckless disregard for whether those representations were true or otherwise violated Young's rights—was not a question to be resolved under Rule 50. Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that the Kolkman Defendants participated in communications that a reasonable jury could find contributed to Young's payments through the continuing threat of sale. The fraud claim against the Kolkman Defendants should have been submitted to the jury.

IV.    DEFENDANTS HAD A DUTY TO DISCLOSE AND THE NONDISCLOSURE THEORY WAS NOT ADDRESSED

The Kolkman Defendants argue that no duty to disclose existed because the parties were adverse. Utah law does not categorically limit a duty to disclose to non-adverse parties. A duty to disclose arises when a party makes a partial representation that creates a materially misleading impression.[8] That duty can arise from a relation of trust, from confidence, inequality of condition and knowledge, or other attendant circumstances.[9] The question is not whether the parties were aligned. The question is whether Defendants said enough to create a false understanding of a material fact while omitting information necessary to make the representation not misleading.

---

[8] *Armed Forces Ins. Exch. v. Harrison,* 2003 UT 14, ¶ 16, 70 P.3d 35; Restatement (Second) of Torts § 551(2)(b) (1977)

[9] *Elder v. Clawson*, 14 Utah 2d 379, 382-83, 384 P.2d 802 (Utah 1963)

A reasonable jury could find that is what occurred here. For months, Defendants sent communications representing that Young's personal property would be seized and sold if he did not pay. At the same time, the record contained evidence that actual sales were only pursued once in well-over 10,000 other cases. Yet Defendants never disclosed that history to Plaintiff despite repeatedly threatening and implying a sale.

A jury could find that omission material and breached Defendants duty to disclose. Whether Defendants had ever followed through on the threatened remedy goes directly to the credibility of the threat and the likelihood that a debtor would pay to avoid it. Young testified that he believed the threatened sale would occur and made payments as a result. That evidence permitted the jury to decide the issue.

Fraud by nondisclosure did not require Kolkman to make a new affirmative misrepresentation. It required evidence that Defendants made partial representations while omitting facts necessary to prevent those representations from creating a materially misleading impression.[10] The record contained that evidence. Defendants first represented that Young's property would be seized and sold if he failed to pay. After those representations induced Young to believe a sale would occur, Kolkman continued to demand and collect payment without disclosing that sales were almost never carried out. A reasonable jury could find that Kolkman knowingly benefited from and perpetuated the misleading impression created by the earlier threats. Because the omitted information went directly to the credibility of the threatened sale, a jury could find the omission material.

---

[10] *First Sec. Bank of Utah N.A. v. Banberry Dev. Corp.*, 786 P.2d 1326, 1328 (Utah 1990)

Plaintiff presented this theory through testimony, documentary evidence, and proposed jury instructions addressing both the duty to speak the whole truth and fraudulent nondisclosure. The issue was also developed through evidence concerning the nature and frequency of actual sales and through proposed jury instructions on fraudulent nondisclosure. The Court's Rule 50 ruling did not separately address the nondisclosure theory. Because the record contained evidence supporting that theory, Rule 50 relief was not warranted on that basis.

Viewing the evidence in the light most favorable to Plaintiff, a reasonable jury could find that Defendants' repeated threats of imminent sale, combined with their failure to disclose the practical nonuse of those remedies, supported liability under a nondisclosure theory. That issue should have been submitted to the jury.

V.      THE JURY'S FDCPA VERDICT CONFIRMS THAT THE RECORD SUPPORTED COMPETING INFERENCES

The jury found both Defendants liable under the FDCPA based on the same underlying collection communications at issue here. While the FDCPA does not require intent or reliance, the verdict confirms that the jury credited Plaintiff's account of the communications in evaluating liability under the FDCPA. Both claims arose from the same core evidence—the threatened sales, the law-enforcement indicia, and the communications used to obtain payment from Young. After hearing that evidence, the jury found Defendants liable under the FDCPA.

Plaintiff proposed a verdict form identifying specific FDCPA violations by section, but the Court instead used a simplified form. Accordingly, any resulting ambiguity in the general verdict does not confine the jury's findings to a narrow disclosure theory.

The FDCPA verdict does not establish fraud, but reflects that the jury credited Plaintiff's account of the communications in evaluating liability under the FDCPA. That same evidentiary record supported competing reasonable inferences regarding intent, falsity, and recklessness. The fraud claim should have been submitted to the jury.

## VI.   DEFENDANTS' MISREPRESENTATIONS OF LAWFUL AUTHORITY SUPPORTED THE FRAUD CLAIM

Defendants' communications, letterhead, and conduct conveyed a perception that they had legal authority to mail collection letters, negotiate payments, and collect periodic payments. Those representations were false. Defendants were not legally authorized to engage in debt collection as they did not have the state registration that was required to do so.[11] Operating without registration was also a criminal violation at the time.[12]

At trial, the jury heard evidence of Defendants' lack of registration and received Instruction 28 confirming that such registration was required. On that record, the jury was permitted to consider whether Defendants' lack of registration bore on the credibility and lawfulness of the collection representations made to Plaintiff. The Court nevertheless removed that theory at the Rule 50 stage even though judgment as a matter of law is only permitted where a reasonable jury would lack a legally sufficient evidentiary basis to find for the nonmovant on the theory presented. The record here plainly permitted competing inferences regarding the effect and significance of Defendants' unregistered conduct. The fraud theory should have been submitted to the jury.

---

[11] Utah Code Ann. § 12-1-1 *et seq.* (repealed 2023)
[12] Utah Code Ann. § 12-1-6 (repealed 2023)

VII.     THE EVIDENCE WAS SUFFICIENT TO SUBMIT PUNITIVE DAMAGES TO THE JURY

Punitive damages were removed on two grounds—the dismissal of the fraud claim and an asserted lack of evidentiary support. If the fraud claim is reinstated for the reasons set forth above, the punitive damages question necessarily follows.

On the evidentiary issue, Rule 50 asks whether a reasonable jury could find the clear-and-convincing standard satisfied, not whether the Court itself would reach that conclusion. The record contained evidence from which a reasonable jury could do so. Defendants operated a collection system built on threats of property seizure that essentially never carried out, collected more than $3.5 million through that system, continued the same practices after this case was filed, and employed staff who could not explain how a sale would actually occur despite issuing thousands of sale notices. A reasonable jury could view that evidence as reflecting knowing or reckless indifference to the rights of others under Utah Code Ann. § 78B-8-201.

To the extent the Court credited testimony regarding payment-plan preferences, speculated about what the jury might have done, or drew inferences from the compensatory damages award, those considerations do not resolve the Rule 50 inquiry, which requires viewing the evidence in the light most favorable to Plaintiff. These are not permissible bases for Rule 50 relief. The evidence was sufficient for a reasonable jury to find the clear-and-convincing standard satisfied.

CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court vacate its Rule 50(a) ruling on Plaintiff's fraud claim and request for punitive damages and enter judgment as a matter of law in Plaintiff's favor on the fraud

claim. In the alternative, Plaintiff requests that the Court vacate its ruling and order a new trial on Plaintiff's fraud and punitive damages claims pursuant to Federal Rule of Civil Procedure 50(b).

DATED 6/11/2026                          Eric Stephenson
                                  _____
                                      *Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 6/11/2026 I served the foregoing REPLY MEMORANDUM IN SUPPORT OF RENEWED MOTION FOR JUDGMENT AS A MATTER OF LAW to all counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*