Eric Stephenson (9779)
STEPHENSON LAW FIRM
250 North Redcliffs Drive, 4B #254
Saint George, Utah 84790
Phone: (801) 386-5200
ericstephenson@utahjustice.com
*Attorney for Plaintiff*

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH CENTRAL DIVISION

| | |
|---|---|
| CHARLES YOUNG,<br>Plaintiff,<br>vs.<br>MICHAEL ERICKSON, *et al.*,<br>Defendants. | **MOTION TO STRIKE FILINGS**<br><br>Case Number: 2:23-cv-00420-TS<br>Judge: Ted Stewart<br>Magistrate Judge: Cecilia M. Romero |

Plaintiff respectfully requests that this Court strike from the record Defendant Michael Erickson's Opposition to Plaintiff's Motion for Attorney's Fees (ECF No. 204), including Exhibits A and B (ECF Nos. 204-1 and 204-2), and the Kolkman Defendants' Opposition to Plaintiff's Motion for Attorney's Fees (ECF No. 207) and exhibits thereto (ECF No. 208-1), pursuant to Federal Rule of Evidence 408 and this Court's inherent authority. In the alternative, Plaintiff requests that the Court seal those filings and disregard any argument relying on them.

ARGUMENT

Plaintiff filed his Motion for Attorney's Fees (ECF No. 199) on May 4, 2026. On May 18, 2026, Defendant Michael Erickson filed his Opposition to Plaintiff's Motion for Attorney's Fees (ECF No. 204), attaching Exhibits A and B (ECF Nos. 204-1 and 204-2). On May 19, 2026, Defendants Rob Kolkman and Constable Kolkman, LLC filed their Opposition to Plaintiff's Motion for

Attorney's Fees (ECF No. 207), together with supporting exhibits found in ECF No. 208-1.

The materials filed at ECF Nos. 204-1, 204-2, and 208-1 consist of correspondence between counsel concerning confidential settlement negotiations in this matter. Both oppositions rely upon those communications to attack the legitimacy and value of Plaintiff's claims and to criticize the conduct and motives of Plaintiff's counsel. In other words, Defendants did not merely disclose that settlement discussions occurred. They placed the negotiations themselves on the public docket and then used those negotiations to disprove the validity or amount of Plaintiff's disputed claim for attorney's fees.

That is precisely what Rule 408 prohibits. Rule 408(a) bars the use of an offer or acceptance in compromise negotiations, and "a statement made during compromise negotiations," to prove or disprove the validity or amount of a disputed claim.[1] Defendants took communications made in an effort to resolve this litigation, placed them before the Court, and used them to argue that Plaintiff's disputed fee claim lacked legitimacy or value and that Plaintiff's counsel acted improperly in pursuing it.

The Tenth Circuit has explained why Rule 408 protects this conduct. Parties must be able to "drop their guard and to talk freely and loosely" during settlement negotiations without fear that concessions or statements made to advance those negotiations will later be used against them.[2] The court recognized that permitting such use would produce "more restricted negotiations."[3] The Rule's purpose is therefore not merely to exclude settlement evidence at trial. It

[1] Fed. R. Evid. 408(a)
[2] *EEOC v. Gear Petroleum, Inc.*, 948 F.2d 1542, 1546 (10th Cir. 1991)
[3] *Id.*

protects the freedom of communication and fosters candor between the parties that makes settlement negotiations possible in the first place.[4]

That protection is meaningless if counsel candidly negotiates on the understanding that the communications are protected only to have the opposing party later place the communications on the public docket and use them as weapons against the claims and counsel who made them. The chilling effect is not theoretical. A lawyer who knows that settlement offers, counteroffers, assessments, concessions, and negotiating positions may later be publicly filed and characterized as evidence of the weakness of a claim or the bad faith of counsel has a powerful incentive to stop making those communications. That leads to precisely the "more restricted negotiations" the Tenth Circuit warned against.[5]

The consequences extend beyond these particular negotiations. Counsel must be able to exercise independent professional judgment in deciding when to make an offer, when to make a concession, how to assess litigation risk, and how to negotiate for a client's interests without having those communications later converted into evidence against the lawyer or the client. If opposing counsel may publish those communications and use them to attack the lawyer's judgment, motives, or representation, that professional judgment is necessarily constrained. Counsel is forced to choose between candid advocacy in settlement negotiations and protecting against the risk that candid advocacy will later be publicly repurposed against the client and counsel. Counsel will inevitably communicate

---

[4] 23 Charles Alan Wright & Kenneth W. Graham, Jr., Federal Practice & Procedure: Evidence § 5314, at 286 (1980)
[5] *EEOC v. Gear Petroleum, Inc.*, at 1546

less, concede less, offer less, and negotiate less freely. That is precisely the chilling effect Rule 408 exists to prevent.

Utah's Standards of Professionalism and Civility reinforce these concerns. The Standards require fair dealing, prohibit counsel from attributing improper motives or conduct to opposing counsel without an adequate factual basis, prohibit holding out the possibility of settlement to obtain an unfair advantage, and specifically prohibit lawyers from publishing correspondence between counsel to the Court unless the correspondence is relevant to a pending issue and the proper evidentiary foundations are met or the Court specifically invites it.[6]

Those principles are directly implicated by what occurred here. A lawyer cannot effectively represent a client if exercising independent professional judgment in settlement negotiations means creating a record that opposing counsel may later publish and use to attack the lawyer's judgment, motives, or representation of the client. The ability to negotiate candidly is part of effective advocacy. Allowing one side to take those communications, place them on the public docket, and weaponize them against opposing counsel necessarily constrains that advocacy and undermines the conditions under which counsel can negotiate freely.

The prejudice and chilling effects here are particularly acute because Defendants did not inadvertently or incidentally refer to settlement discussions. They filed the underlying correspondence itself, including complete email chains expressly identified by Plaintiff's counsel as confidential settlement communications protected by Rule 408. They then used those communications for

---

[6] Utah Standards of Prof'l & Civility ¶¶ 2, 3, 9, 12, *adopted by* Utah Sup. Ct. R. Prof'l Practice 14-301

purposes Rule 408 prohibits. Defendants could have presented their fee arguments without publicly filing the parties' private settlement correspondence. Their decision to file the communications was therefore unnecessary to the resolution of their fee arguments and directly undermined the protection Rule 408 provides.

Nor can Defendants avoid Rule 408 by characterizing the communications as relevant to some other aspect of their fee arguments. The question is not whether Defendants can identify some conceivable relevance for settlement discussions. The question is how they actually used the communications. Here, Defendants used them to attack the validity and amount of Plaintiff's claims and counsel's conduct. That is the prohibited use specifically prohibited by Rule 408(a).

The appropriateness of striking these materials should therefore not be in doubt. Even so, the Tenth Circuit has instructed that where the admissibility of compromise evidence is uncertain, "the better practice is to exclude evidence of compromises or compromise offers."[7] Here, there is no uncertainty about what Defendants filed or how they used it. The settlement communications are identifiable, the prohibited use is apparent from the filings themselves, and the communications have no legitimate place in the public record.

This Court also has inherent authority to control its docket and protect the integrity of its proceedings.[8] That authority necessarily includes the ability to strike material improperly placed before the Court and to prevent the judicial

---

[7] *Gear Petroleum*, 948 F.2d at 1546 (*quoting Bradbury v. Phillips Petroleum Co*., 815 F.2d 1356, 1364 (10th Cir. 1987))

[8] *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–44 (1991) (majority recognizing courts' inherent authority to address litigation abuses). *See also id. at 58* (Scalia, J., dissenting) (acknowledging courts' inherent power to "inforce the observance of order" and protect the integrity of the judicial process)

process from being used as a vehicle to publicize and weaponize protected settlement communications.

## CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court strike ECF Nos. 204-1, 204-2, and 208-1, together with the portions of ECF Nos. 204 and 207 that disclose, rely upon, or characterize the settlement communications contained in those exhibits. In the alternative, Plaintiff requests that the Court seal those materials and preclude Defendants from relying upon settlement communications for any purpose prohibited by Rule 408.

DATED 8/19/2026

Eric Stephenson
*Attorney for the Plaintiff*

CERTIFICATE OF SERVICE

I hereby certify that on 8/19/2026 I served the foregoing MOTION TO STRIKE FILINGS to Defendants' counsel of record through this Court's electronic filing system.

/s/ Eric Stephenson
*Attorney for Plaintiff*